## McEOWEN & CO. *v.* SCOTT.

### *Acceptance of Order.*

G., who was at work for defendant under a contract to get out lumber, wishing to buy goods of plaintiffs, offered them his order upon defendant, which they took, charged to defendant, credited to G., and presented to defendant for acceptance. Defendant declined to accept it unconditionally, saying that he was owing G. only a little over $100, but that plaintiffs might leave it, and that "he thought he could save it for them" if G. went on with the job, as he thought he would, and that he would keep all over the running expenses of the job for them. The order was left with defendant, who charged it in G.'s pass-book, and ever after kept it, though plaintiffs had called for its production. When the order was left with defendant, he was not, in fact, owing G., and was never after indebted to him, as he was obliged to pay him as his work progressed, to enable him to go on with it. *Held,* that there was no acceptance of the order sufficient to bind defendant to its payment.

BOOK ACCOUNT. The auditor reported the following facts:

The plaintiffs are merchants in the village of Bennington. Along in the winter of 1872, one Lyman Greenslit went to plaintiffs and said that his father and he had made a contract with defendant to get out lumber for him, and wanted to trade with plaintiffs at their store, and would pay them by an order on defendant. He traded till the bill amounted to $300, and then gave plaintiffs an order on defendant for that amount, and plaintiffs, under date of February 10, 1872, gave the Greenslits credit for the order, and charged it to defendant, without extending the amount. Some time afterwards the said Lyman Greenslit went to plaintiffs' store and showed them his and his father's pass-book, which was in the handwriting of defendant's clerk, and contained defendant's charges against them. Among the charges was one of this order, under date of February 22, 1872. Upon seeing this charge, plaintiffs extended the amount of the order on their books.

Upon receiving said order as aforesaid, Daniel McEowen, one of the plaintiffs, went to defendant's office and presented the order to him for acceptance. He declined to accept it unconditionally, but told McEowen to leave it; that he was not owing the Greenslits but a little over one hundred dollars then, but if they went on with their job, as he thought they would, he thought he could save it for them, and after the running expenses of the job were paid, would save for them first. The order was accordingly left with defendant, and has remained with him ever since, and has never been delivered to plaintiffs, although they have called for its production.

The Greenslits continued to work under their contract, and the defendant paid them much more than the amount of said order after it was left with him as aforesaid; but he was obliged to do so, to enable them to go on with the contract, and to defray the running expenses thereof. In the first half of July, 1872, defendant saw McEowen, and told him that the Greenslits had got through work for him, and that he thought there would be something to pay plaintiffs on the order, and then was the first intimation defendant had that plaintiffs claimed the full amount of the order; and defendant was not aware till then that plaintiffs had charged the order to him.

It appeared by the testimony of D. W. Hyde, that some time after the order was left with defendant as aforesaid, the witness presented for acceptance an order in his favor, drawn by the Greenslits on defendant, and that defendant declined to accept it

48

because he had accepted an order in favor of plaintiffs, or, at least, had charged the Greenslits with an order in favor of plaintiffs for $300, and feared there would not be enough in his hands to pay both orders. Plaintiffs introduced no testimony to show the condition of the accounts between defendant and the Greenslits. Plaintiffs' account against the Greenslits, for which said order was given, was mostly for pork, flour, and groceries, needed by them to carry on their contract with defendant.

The auditor finds that the amount of said order is due plaintiffs, subject to the opinion of the court on the foregoing facts.

The court, at the December Term, 1875, WHEELER, J., presiding, rendered judgment on the report for the plaintiffs for the full amount of said order; to which defendant excepted.

*Gardner & Harmon* (*Davenport & Eddy* with them), for the defendant, cited *Fisher* v. *Beckwith*, 19 Vt. 31; *Arnold* v. *Sprague*, 34 Vt. 402; *Edson* v. *Fuller*, 22 N. H. 183; *Jenne* v. *Ward*, 1 B. & Ald. 653; *Mason* v. *Barff*, 2 B. & Ald. 26; Chit. Bills, 307; Story Bills, s. 238; Edw. Bills, 405; 1 Parsons Bills, 381 *et seq.*

*A. P. Lyman* (*T. Sibley* with him), for plaintiffs, cited *Hall & Chase* v. *Peck & Co.* 10 Vt. 474; *Jackman* v. *Partridge*, 21 Vt. 558.

The opinion of the court was delivered by

ROSS, J. The auditor has stated the facts found by him, and submitted to the court to determine whether these facts render the defendant liable. If they show that the defendant had accepted unconditionally the Greenslit order, or had so conducted in regard to it as would in law amount to an acceptance, he is liable to plaintiffs in some form of action. The plaintiffs received the order, and gave the Greenslits credit for it, and charged the same to the defendant. These acts, of themselves, imposed no liability upon the defendant. One of the plaintiffs, Daniel McEowen, presented the order to the defendant for acceptance. It is found that " he declined to accept the order unconditionally, but told McEowen to leave the order; that he was not owing the

Greenslits but a little over one hundred dollars then, but if they went on with the job. as he thought they would, he thought he could save it for them, and after the running expenses of the job were paid, would save for them first." This is all that the auditor has found ever passed between the parties in regard to the acceptance of the order. It must all be construed together, and when so construed, amounts to an acceptance of the order on condition he could save the amount of the order for them out of what might be due the Greenslits on the job after deducting what he might have to pay them to enable them to go along with and complete the job. In order to establish the defendant's liability under this acceptance, it was incumbent on the plaintiffs to show that the condition had been complied with ; that the defendant had, or might have, saved enough out of what he was to pay the Greenslits on the job, above what he necessarily and reasonably advanced them to pay their running expenses, to have paid the order, or at least, some portion of it. It is found that there was not in fact at the time the order was given, nor was there afterwards, anything due the Greenslits from the defendant on the job, but that he was obliged to advance them the entire amount their due, to enable them to go on with the contract, and to defray the running expenses thereof. It is manifest from these facts, that the defendant never became liable by the fulfillment of the condition on which he accepted the order. As a part of the condition of the acceptance, the order was to be left with him ; hence, no acceptance can be inferred by his retention of the order. There are cases which hold that where an order is presented, or sent to the person on whom it is drawn, and he takes it without any qualification or condition, and retains it an unreasonable time, this amounts to an acceptance, especially if the acceptor knew or had reason to expect that the drawee had or would make advances, or alter his condition in consequence of such retention of the order. But such cases have no applicability to the case at bar, for the reason already stated. The charge of the order by the defendant's clerk, on the pass-book of the Greenslits, does not tend to show any change in the terms of the acceptance, but only that the defendant was in good faith trying to save the amount of

the order for the plaintiff. Such charge was not intended for the eye of the plaintiffs ; and if it fell under their eye, they had no right to interpret it as any variation of the condition which the defendant had attached to his acceptance of the order. If they have been misled by it, they have not advanced anything to the Greenslits by reason thereof, and have not been damnified by it. The testimony of Hyde was not inconsistent with the conditional acceptance, but rather tended to show that the defendant was acting in good faith towards the plaintiffs, according to the condition attached to his acceptance. What is found in regard to the non-production of the order by the defendant, might have some bearing if the action had been trover, but is of no significance in this form of action, especially, if the call for its production was some time when the defendant happened not to have the order at hand. It is not found that the defendant refused to produce the order, or to deliver it back to the plaintiffs. We find no facts stated by the auditor, nor combination of facts, that warrant holding the defendant liable on the order. Hence, it becomes unimportant to consider whether it constituted a proper charge on book that could be recovered in this form of action.

Judgment reversed, and judgment on the report for the defendant to recover his costs.