## The Colorado National Bank of Denver v. Boettcher.

1. The holder of a check drawn against funds cannot maintain an action in his own name against the drawee who refuses payment, regardless of the question of acceptance.

2. To warrant the inference of acceptance from conduct, it would seem

that the circumstances must clearly indicate such an intention on the part of the drawee.

3. Mere detention does not constitute an implied acceptance, and a conditional acceptance is not enforceable until complete fulfillment of the condition.

### *Appeal from District Court of Arapahoe County.*

BOETTCHER, the appellee, filed his complaint in the district court, alleging substantially that appellant was a banking corporation; that on January 31st, 1878, appellant was possessed of certain moneys of Shackelton & Brinker, co-partners, to be paid on demand; that on said day Shackelton died, leaving said Brinker surviving; that about February 2, 1878, appellant received other moneys for use of said firm, also payable on demand; that February 8th said moneys amounted to $1,000; that on said February 8th Brinker, as surviving partner, assigned all said moneys, and ordered the same paid over to appellee; that appellant had notice of such assignment; that appellee demanded payment, which was refused. Demand for judgment, etc.

Appellant answered substantially as follows:

Admitted that appellant was a corporation; that Shackelton and Brinker were partners; that Shackelton died, etc.; and also admits the assignment as alleged, but avers that knowledge of the same came to it on the evening of February 8th, about 7 o'clock. Denied that said moneys, or any part thereof, were held by it to be rendered to said Brinker, or subject to his order, or that appellant was indebted to said firm of Shackelton & Brinker at the time of said assignment to appellee. Averred that at the time said assignment was made, Shackelton & Brinker were indebted to appellant in a larger sum of money than that assigned to appellee; that the same was evidenced by a promissory note, executed by Shackelton & Brinker, dated December 6, 1877, payable sixty days after date, to appellant, for $1,200, with interest thereon; that said note matured on February 7, 1878, and prior to assignment to appellee, and that appellee had knowledge of the fact prior to the assignment.

By way of cross-demand, appellant averred that at the time of the assignment of said moneys, and demand of appellee therefor, said Shackelton & Brinker, and said Brinker, as surviving partner, were indebted to appellant in $1,200 and interest, according to the effect and tenor of a certain promissory note.

Averred that said note became due and payable February 7, 1878; that the whole thereof remained unpaid February 8, 1878, the date of said assignment, and demand for the moneys in said complaint mentioned; that said sum of money due and payable on said note is still unpaid; offer of appellant to set off amount due on said note; demand for judgment.

Afterward the appellee, by leave of court, filed his amended complaint, which substantially alleged, as a second cause of action:

That on January 28, 1878, appellant was and is a banking corporation; that Shackelton & Brinker were copartners; that they made their check in writing, duly stamped, etc., thereby directing said appellant to pay to appellee or order, $472$\frac{49}{100}$; that January 31, 1878, Shackelton died, leaving Brinker surviving; that before said check became due according to its terms, Shackelton & Brinker, and Brinker, as survivor, paid to appellant, to meet said check, to be paid thereon, and on other checks, large sums of money, more than the amount mentioned·in said check; that appellant received the same to be paid on the checks of Shackelton & Brinker; that appellant, in consideration of the receipt of said money, agreed to pay said moneys upon the checks of Shackelton & Brinker, or of Brinker, survivor; that on February 5th, and on February 7th, 1878, while said moneys were held by appellant, appellee presented said check and demanded payment thereof, and appellant refused.

Third cause of action: averments substantially the same as in second cause of action, except as to check. Check dated January 28, 1878, payable to order of appellee, six days after date, for $453$\frac{25}{100}$.

Fourth cause of action: averments substantially as in second and third causes of action, except as to check. Check dated January 31, payable to order of appellee, for $437.62. Jurat.

The answer of appellant to amended complaint.

Denied that Shackelton & Brinker, or Brinker as surviving partner, delivered or deposited with appellant large sums of money to meet or pay the said checks; that it was agreed that any moneys deposited with appellant were to be paid out on said checks, or any of them; that Shackelton & Brinker, or Brinker, etc., deposited with appellant sufficient money to pay said checks; that on the 5th or 7th of February, 1878, said parties had deposited with appellant sufficient money to pay said checks; that appellee presented said checks for payment on the 5th of February, 1878.

Answer alleged as a second defense, by way of cross-demand or set-off, that Shackelton & Brinker, or Brinker, etc., were indebted to appellant $1,200, and interest for money loaned, evidenced, etc., by promissory note, etc.; that Shackelton & Brinker, or Brinker, etc., did not have a sufficient amount of money to their credit to pay said note; that at the maturity of said note the sum to the credit of Shackelton & Brinker, or Brinker, was about $1,000, which appellant offered to set off, etc.

Replication: appellee had not sufficient knowledge to found belief, and asked that appellant be held to prove; that Shackelton & Brinker, or Brinker, etc., were indebted to appellant, etc., as evidenced by promissory note, etc., or that said note matured February 7, 1878, or that they were indebted to appellant in any sum whatever.

Upon the trial of the cause the jury, under the direction of the court, rendered a verdict in favor of the appellee, assessing his damages at $997.83; a motion for a new trial was interposed by the appellant and denied, and judgment entered on the verdict.

Mr. John Q. Charles, for appellant.

Messrs. WELLS, SMITH & MACON, for appellee.

BECK, J. The verdict in this case appears to have been directed for the plaintiff, Boettcher, upon the view of the law taken by the district judge, that the holder of a check drawn against funds can maintain an action in his own name against the drawee who refuses payment, regardless of the question of acceptance. This is a question upon which courts and law writers are, to some extent, divided, and much learning has been expended in the discussion of the opposing views taken. Each is supported by arguments of great force, and did we not, from a careful review of all the authorities, deem the question practically settled against the right of action, we should consider it a close and serious question. But every conceivable phase of the question has been discussed; every objection to the rule denying the right of action has been duly considered, and the rule having been adopted and followed by courts of the highest authority upon questions of commercial law, that a right of action does not exist where there has been no acceptance or promise to pay, we do not hestitate to accord to the adjudication the force of an established precedent. The subject has been so exhaustively considered by these authorities, that it is only necessary for us to cite them in support of the rule. *Bank of Republic* v. *Millard*, 10 Wallace, 152; *First National Bank* v. *Whitman*, 4 Otto, 343; *Carl* v. *National Security Bank*, 107 Mass. 45; *Ætna N. B.* v. *Fourth N. B.* 46 N. Y. 82; *Case* v. *Henderson*, 23 La. Ann. 49; *Moses* v. *Franklin Bank*, 34 Md. 580. Other authorities are referred to in the cases cited.

But counsel for appellee rely mainly for an affirmance of the judgment, upon the proposition that the evidence shows an acceptance on the part of the bank.

If this be true, then all the authorities are agreed that the check-holder may maintain his action in his own name against the drawee. It is not pretended that there was an express acceptance, but it is insisted that the conduct of the officers of .

the bank was such as to amount to an implied or conditional acceptance.

Reference is made to 1 Daniels Neg. Inst. § 499, where it is said that "keeping a bill a considerable length of time without returning an answer, may, under some circumstances, be considered an acceptance." The doctrine is qualified in the text as follows: "Especially if the drawee be informed that the delay will be so considered, and there be an inference from the language of the drawee that he intended an acceptance. These cases have been decided upon special circumstances, and as a general rule, the mere detention for an unreasonable time is not considered as amounting to an acceptance."

To warrant the inference of acceptance from conduct, it would seem that the circumstances must clearly indicate such an intention on part of the drawee. Thus, if he be informed that a detention of the check or bill will be so construed, and he thereafter detain it, an intention to be bound as acceptor is implied.

In the case of *Jeune* v. *Ward*, 1 B. & Ald. 653, the bill was left for acceptance May 29, and retained until the 9th day of July, a period of forty-one days, when the drawee destroyed it. He had previously refused to accept it, but the case does not disclose the time of refusal. Lord Ellenborough was of opinion that having detained the bill an unreasonable length of time before certifying his refusal to accept, he should be held liable. The other judges were of different opinions, however. They considered that the bill having been left with the drawee for acceptance, and not sent by letter, it was the duty of the party leaving it to call for it and inquire whether it was accepted, and not the duty of the drawee to send it back; also, that having refused to accept before destroying the bill, the act of destroying could not be construed as an act of acceptance.

In *Mason* v. *Barff*, 2 B. & Ald. 26, the bill was sent to the drawee by letter, with a request to accept and return. It was detained ten days, and at this time the drawee notified the pay-

ees that it was not accepted, because the carrier's receipt for the wool against which it was drawn had not been received, and offered to return it. He likewise stated that the bill was retained by request of the drawers, to hold it until their invoice was received. No answer being received from the payees, it was held sixteen days longer and then returned. A recovery was insisted upon on the ground that the bill had been detained an unreasonable length of time, and that the detention had been at the request of the drawers and without the consent of the payees. Held, that the plaintiff could not recover. The circumstances showed that there was no intention to accept until the invoice or carrier's receipt was received, and the condition never having been satisfied, no liability was incurred.

In *Harvey* v. *Martin*, 1 Camp. 425, the bill was sent to the drawee with request to accept and send it to the payee. Two weeks afterwards, the request not having been complied with, the drawer again wrote the drawee, asking him to accept and return the bill, adding that detention would be considered as equivalent to acceptance. Some time after this the drawee wrote that he had intended to accept the bill, but now refused, as he had no funds of the drawer in his hands. Held, the drawee was liable as acceptor.

In *Koch* v. *Howell*, 6 Watts & Serg. 350, it was held that the retention of an order until the trial was not conclusive evidence of acceptance, but a question of fact for the jury, since the retention was subject to explanation.

The doctrine of all the authorities cited is that mere detention does not constitute an implied acceptance, and that a conditional acceptance is not enforceable until complete fulfillment of the condition. See Byles on Bills, 191–193; Parsons on Notes and Bills, 284; Edwards on Bills and Prom. Notes, 418; *Liggett* v. *Weed*, 7 Kansas, 273.

The longest detention in the case at bar was for the space of six days. The drawees were not notified that a detention would be considered equivalent to acceptance. There was no promise

to pay any of the checks. Until the day on which they were returned, there was not, at any time, sufficient funds on deposit to the credit of the drawers to pay the two checks on which judgment was entered. The act of returning the checks to the Union Bank of Greeley cannot be construed as an intention to accept, for no such intention is indicated, either by the act itself or as taken in connection with the letter of the cashier accompanying the checks; and as regards the explanation of the detention, given by the president of the bank as a witness upon the trial, viz: that he "supposed they would put up money to meet the whole of them," we cannot assent to the proposition that it is equivalent to a promise previously made, to pay "when in funds."

If the language of the president be formulated into a promise, it would be a promise to pay on condition that the drawers furnished sufficient funds to pay all three of the checks; and since the requisite deposit was never made, the condition was not fulfilled and no liability was incurred. *Liggett* v. *Weed*, *supra; Wintermute* v. *Post*, 4 Zabriskie, 420.

We are of opinion that the judgment cannot be sustained on the ground of an implied promise on the present testimony, either upon the authority cited or upon principle. As further testimony affecting the conduct of the appellee may be produced upon another trial, the judgment will be reversed and the cause remanded.

*Reversed.*