SCHULER *v.* LACLEDE BANK and others.[1]

(*Circuit Court, E. D. Missouri.* April 12, 1886.)

1. BANKS AND BANKING—CHECKS—NOTICE.
    A check does not operate as an equitable assignment of any portion of the drawer's deposit, as against the bank, until the bank is notified that it has been drawn.[2]

2. SAME—EQUITABLE ASSIGNMENT.
    Where the drawer of a check becomes insolvent, and makes a general assignment before the check is presented, the check will operate as an equitable assignment of the amount drawn for, as against the general assignee.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.
[2] See note at end of case.

3. SAME—WHERE DRAWER IS ONE OF SEVERAL BANKS OWNED BY SAME MAN, BUT HAVING SEPARATE ACCOUNTS WITH DRAWEE.

Where the same man owns several banks, each having a separate account with still another bank, a check drawn by one of his banks upon the outside bank will not operate as an assignment of any portion of the accounts of his other banks.

4. SAME—EQUITIES AS BETWEEN BANK AND CHECK-HOLDER.

As between a bank holding a note which is due and the payee of a check, drawn by the maker of the note, the equities are in favor of the bank.

5. SAME—DEPOSITOR'S NOTE.

Where a bank holds a depositor's note, it has a right, at any time during the day on which it falls due, to apply funds in its hands belonging to the maker to the payment of the note, even where nothing will be left to the maker's credit to apply on checks.

6. EQUITY—TRUSTS.

Where a trust fund can be traced, equity will follow it.

In Equity.
*Dyer, Lee & Ellis*, for complainant.
*Boyle, Adams & McKeighan*, for defendants.

BREWER, J., (*orally*.)  In the case of Schuler against the Laclede Bank, which was submitted upon bill, answer, and agreed statement of facts, the suit is brought by the plaintiff as the payee of a check drawn by Israel & Co. on the defendant the Laclede Bank. The check, drawn October 20th, was presented October 26th. Israel & Co. failed, and made an assignment on October 24th, of which notice had been received by the Laclede Bank, who declined paying.

The first question is whether an action at law or a suit in equity can be maintained by the payee of such a check against the drawee, under any circumstances, and, if so, under what. That no action at law can be maintained in the federal courts is clear. In the case of *Bank* v. *Millard*, 10 Wall. 152, the supreme court held that "the holder of a bank-check cannot sue the bank for refusing payment, in the absence of proof that it was accepted by the bank, or charged against the drawer." The same doctrine was affirmed in a later case of *Bank* v. *Whitman*, 94 U. S. 343. "The payee of a check, before it is accepted by the drawee, cannot maintain an action upon it against the holder, as there is no privity of contract between them."

In the case of *Christmas* v. *Russell*, 14 Wall. 69, in reference to what constitutes this matter as to whether there is an equitable assignment, the court say:

"The assignor must not retain any control over the fund, any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fund-holder can safely pay, and is compellable to do so, though forbidden by the assignor. Where the transfer is of the character described, the fund-holder is bound from the time of notice. A bill of exchange or check is not an equitable assignment *pro tanto* of the funds of the drawer in the hands of the drawee."

In 2 Daniel, Neg. Inst. § 1638, the author, who criticises this doctrine of the supreme court, states that "it is universally understood between banks of deposit, arising from the customs of trade, that the check

of the holder is to be paid upon presentation. The United States supreme court so declares in a recent opinion, though, as yet, it has not followed that declaration to its logical sequence;" citing *Central Bank* v. *Life Ins. Co.*, [104 U. S. 54,] decided in 1881. That logical sequence, as he contends, would be that such a check operates as an equitable assignment, and that a suit in equity can be maintained thereon.

These are the chief rulings and expressions of opinion on the part of the supreme court in this respect. I think it is clear from them that no action at law, and no suit in equity, can be maintained upon the mere possession of such a check; that there must be, besides the possession of the check, some other circumstances which either create a contract between the payee and the bank or which equitably require that the funds in the possession of the bank should be appropriated to the payment of the particular check.

Over against these decisions of the supreme court I find these in this circuit: One in the case of *Walker* v. *Seigel*, reported in 2 Cent. Law J. 508, in which my Brother TREAT states the rule thus:

"An order drawn on a general or particular fund for a part only does not amount to an assignment of that part, or give a lien as against the drawee, unless he accepts. That rule, as thus broadly stated, seems to apply only to cases at law. Such an order, so soon as notice is given to the drawee, works an assignment in equity."

In *German Sav. Inst.* v. *Adae*, 1 McCrary, 501, S. C. 8 Fed. Rep. 106, after the insolvency of, and a general assignment by, the drawer, the bank came into this court by a bill of interpleader and tendered the money, brought in the payee and the assignee of the drawer, and asked the court to dispose of the fund; and the court, holding possession of the fund, as between the drawer of the check and the payee declared that the payee was entitled to it, and so gave judgment.

In a still later case of *First Nat. Bank* v. *Coates*, reported in 8 Fed. Rep. 540, the Mastin Bank had drawn on the Metropolitan Bank of New York several checks. On presentation, the Metropolitan Bank refused to pay, having previously received notice of an assignment by the Mastin Bank, and turned the money over to the assignee, Coates. These various check-holders then brought a suit in equity against the assignee having possession of this money, claiming that, as between themselves and the assignee who represented the drawer, they had an equity upon it superior to the general creditors of the Mastin Bank; and Justice MILLER, the presiding justice of this circuit, held that they had, and in the course of the opinion he says:

"The question here is whether this is an appropriation in equity of that much of that fund in favor of the payee. It is said it is not, because the payee or holder of the check cannot bring suit against the bank for money, and therefore it is not an equitable assignment of that much money. But that argument is founded on a misconception or want of proper conception of the doctrine of equitable assignments. The very words 'equitable assignment' are used because the assignment is only recognized in a court of equity, and

not a court of law. If it were recognized in a court of law, it could be enforced there, and we would never have heard of any such words as 'equitable assignment.' Therefore it is an assignment of that much of the debt, which a court of equity will recognize and a court of law will not."

And further on he says:

"The philosophy of it is that this fund, having been appropriated by these checks duly presented, did not pass by the assignment; that the fund on which they were drawn, to that extent, did not pass by the assignment as the general property of the bank into the hands of Coates, but when he got it he held it subject to the lien established on it. The result of that is that these drafts are each of them an appropriation of that much of the fund, and the complainants are entitled to recover the amount."

That justifies me in the conclusion which I have just expressed, that no suit in equity ever can be maintained upon the mere possession and production of the check by the payee; that there must be some equitable circumstances to justify the court in seizing that fund and giving it to the payee. One of those equitable circumstances is the insolvency of the drawer; because, when the drawer becomes insolvent, the question is whether that money shall be paid over to the payee to whom the drawer has directly appropriated it or distributed generally among his creditors, and it would seem to be equitable that the party in favor of whom the appropriation has been made should be preferred to those creditors who are merely general creditors, and in whose favor no such appropriation has been made. That rule applies in this case. So, also, I think there is some room for the application of the principle that where a fund can be traced equity will follow it. I do not mean to say that there is the fullest room for the application of that principle. The facts are that the cashier of Israel & Co., the drawer of this check, held a note belonging to the plaintiff for collection. He received in part payment thereof a check for $12,500, drawn upon a bank at Fort Worth. He received this as the agent of the plaintiff, the owner of the note. He sent that check to the bank at Fort Worth, with directions to deposit the same to the account of Israel & Co., and then, within a day or two, directed $7,000 of that money to be transferred to the Laclede Bank, which was done, and in a roundabout way some more was also transferred to the Laclede Bank; so that, practically, the money collected on that note went to the Laclede Bank, and made the fund there to the credit of Israel & Co. at the time this check was presented. I think for both these reasons the payee of the check is entitled to maintain this suit.

A further question then arises upon these facts: Israel & Co., on the morning of October 24th, had on deposit in the Laclede Bank twelve thousand and odd dollars. On that day they assigned. Three months before they had discounted with the Laclede Bank a note of $6,500, which, by its terms, would become due on October 26th. Prior to the 24th they forwarded to the Laclede Bank a new note for $6,500, dated October 24th, as a renewal of the former note. The

Laclede Bank, on October 24th, the day this new note was received, charged up the old note to the account of Israel & Co., but did not discount the new note,—at least, they did not enter it on the books, and had not formally resolved to discount it. So it stood on the morning of the 26th. On that morning, prior to opening of the bank, they received telegraphic notice of the assignment, and of course declined to discount the new note. At a quarter past 10 this check was presented. Now, the bank insists that this note was due on the 26th; that, having funds in its possession, it was at liberty to charge up that note as against those funds; and that, therefore, prior to the presentation of this check, Israel & Co.'s account was reduced to that extent. On the other hand, it is claimed that the note was not payable until the close of the day of October 26th, and therefore that this check was presented before the note was payable.

This question must be solved in a court of equity, upon equitable grounds, and I think that it is equitable for a bank, upon the day on which a note becomes due, and at any time during the day, having funds of the maker in its possession, to apply those funds to the payment of that note, although by so doing it leaves nothing standing to the credit of the maker to apply on checks drawn by him. As between the bank, the holder of a note due, and the payee of a check upon that bank, the equities are in favor of the bank. Or, at least, if the equities are equal, legal title to the funds and possession is with the bank, and it should not be postponed.

This only brings me to another question. J. M. Israel was the sole owner of the Bank of C. W. Israel & Co. He was also sole owner of the Exchange Bank of Harold, located in another city, and of the Exchange Bank of Wichitaw Falls, located in still another place. Each of these three banks owned by J. M. Israel, doing business under a separate name, had a separate account with the Laclede Bank. Does the drawing of this check by the Bank of C. W. Israel & Co. operate in any way as an equitable assignment to the payee of the check of any portion of the accounts of these other banks, upon the simple ground that the same man is proprietor of all three? I think not. The equitable assignment created by the drawing of a check does not give rise to anything in the nature of a garnishment upon the bank. Supposing the Laclede Bank, having this account with Israel & Co., had also in its possession a stock of merchandise belonging to Israel & Co., could it for a moment be claimed that the drawing and presentment of this check would have operated to give a lien upon the stock of goods, or to charge it in any way as a garnishee? It seems to me all that can be claimed in respect to such a check is that it operates as an equitable assignment of the fund on which it is drawn, and to the extent only that the fund remains in the possession of the drawee at the time it is presented.

In that view of the case, it is unnecessary to inquire as to the state of the account of these other banks, or what would be the claim

of the assignee as against the Laclede Bank.   The account of Israel & Co. was $12,412.41, less the $6,500,—the note charged up on the 24th,—leaving a balance of $5,912.41 subject to the check at the time it was presented, and for that amount, with legal interest from the date of demand, the plaintiff may take decree.

NOTE.

It is said by the supreme court of Illinois, in the case of National Bank of America v. Indiana Banking Co., 2 N. E. Rep. 401, that a check drawn on a bank operates as an assignment of the funds of the drawer to the amount for which the check is drawn.

Notwithstanding the agreement which bankers make with their customers to pay their checks to the amount standing to their credit, a checkholder can take no benefit from this agreement, and a check does not operate as a transfer or assignment of any part of the debt, or create a lien at law or in equity upon the deposit. Ætna Nat. Bank v. Fourth Nat. Bank, 46 N. Y. 82.

There is no privity of contract between the holder of a check and the bank on which it is drawn, and a refusal to pay the check would not give the holder a right of action against the bank.   Case v. Henderson, 23 La. Ann. 49.

Where a depositor draws his check on his banker, who has funds to an equal or greater sum than his check, it operates to transfer the sum named to the payee, who may sue for and recover the amount from the bank, and a transfer of the check carries with it the title to the amount named in the check to each successive holder.   Union Nat. Bank v. Oceana Co. Bank, 80 Ill. 212.

A check in the ordinary form does not operate as an assignment of so much of the drawer's funds in the drawee's hands.   Attorney General v. Continental Life Ins. Co., 71 N. Y. 325.

No action can be maintained, on an unaccepted check, against the drawee.   National Bank of Rockville v. Second Nat. Bank of Lafayette, 69 Ind. 479.

No action lies, in favor of the transferee of an accepted check, against the bank on which it is drawn.   Colorado Nat. Bank of Denver v. Boettcher, 5 Colo. 185.