WESTBERG, Respondent, vs. CHICAGO LUMBER & COAL COM-
PANY, Appellant.

*March 27—April 17, 1903.*

*Nonnegotiable bill of exchange: Acceptance: Retention: Estoppel:*
*Evidence: Court and jury: Negotiable instrument law.*

1. Acceptance of a nonnegotiable bill of exchange will not be im-
plied from its retention by the drawee unless it was presented
to him for acceptance by the holder or his authorized agent and
the retention was accompanied by circumstances, contractual
or tortious, such as arouse an estoppel.

2. Evidence that a nonnegotiable draft or order drawn in favor of
plaintiff upon defendant and payable on demand was indorsed
by plaintiff and left with the drawer to be sent to defendant;
that it was so sent with other orders similar in form with
which plaintiff had no connection; that such other orders were
not sent for acceptance, but merely as vouchers between the
drawer and drawee, in response to which the drawee sent
money directly to the drawer; and that plaintiff expected to re-
ceive his money from the drawer,—is *held* not to warrant the
court in holding, as matter of law, that the *plaintiff* delivered
the bill *for acceptance* to the defendant.

3. Plaintiff's order in such case was never returned to him, and the
drawer refused to pay. In an action against the drawee the
agent of the latter testified that he had no recollection of the
order and did not know whether or not it was among papers
in defendant's principal office. *Held*, that this did not warrant
a finding, as matter of law, that defendant had destroyed the
order.

4. A bill of exchange which is not payable to order or bearer is not
a negotiable bill within the definition of sec. 1680, Stats. 1898,
as amended by ch. 356, Laws of 1899 (Negotiable Instruments
Law), and the rights of the parties are therefore not affected
or controlled by that law.

APPEAL from a judgment of the circuit court for Bayfield
county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Action upon a negotiable bill of exchange drawn upon the
defendant in favor of the plaintiff by the Lien-Neally Lum-
ber Company for $585, alleged to have been accepted by the
defendant. The answer was a general denial. The evidence

disclosed that the Lien-Neally Lumber Company, sawmill owners, had purchased from the plaintiff certain logs or stumpage amounting to $585; that they had sold product of their mill, including that of these logs, to the defendant, and were in the habit of making orders and drafts upon the latter for money to pay their various bills. About April 21st, upon plaintiff's application for payment, they made out an order upon the defendant substantially as follows:

"*To Chicago Lumber & Coal Co.:*

"Please pay to *John Westberg* five hundred eighty-five (585) dollars for logs delivered at Bibon as per contract.

"[Signed]    LIEN-NEALLY LUMBER Co."

They had plaintiff write his name on the back of it, and then Mr. Lien mailed that order, in connection with other orders and time-checks aggregating some $2,000, to the defendant, accompanied by a letter the contents of which are not disclosed. The defendant's representative denied any memory of the order or draft in favor of the plaintiff. It was proved, however, that he sent to the Lien-Neally Company the money for the other orders inclosed in the same letter. Plaintiff never heard from the defendant, but made repeated applications to the Lien-Neally Company for payment, and was put off from time to time by promises, until finally they refused to pay, saying he must look to the defendant. At that time the defendant had paid drafts of that company to more than the amount of the indebtedness to it, and refused to pay this. The plaintiff's draft never was returned to him.

On the trial, a special verdict being requested, the court submitted but one question, namely, whether the defendant received this draft on or before April 23d, which was answered in the affirmative, and thereupon the court found that the plaintiff delivered that order for acceptance on or before April 23d; that it was received by the defendant, and was by it destroyed, and that the defendant is indebted to the

plaintiff in the amount thereof, with interest; the last conclusion being predicated upon the theory that the retention and destruction of the order constituted an acceptance. From judgment in accordance with that finding the defendant appeals.

For the appellant there was a brief by *Lamoreux & Shea,* and oral argument by *W. F. Shea.*

*E. F. Gleason,* for the respondent.

Dodge, J.   Rendition of judgment in favor of plaintiff in this case can be justified only on one of two theories—either that in law an implication of acceptance results from the mere physical receipt of a bill of exchange by the drawee, followed by silence, or that all other facts essential to such implication were undisputed or were supported by inference from undisputed facts so clear and unavoidable that no reasonable mind could draw any other.   Appellant had the right to have each controverted question of fact decided by the jury.

Upon the question of law as to when implied or constructive acceptance takes place, the authorities are reasonably clear and approximately unanimous.   Upon delivery for acceptance, the drawee is not bound to act at once.   He has a right to a reasonable time—usually twenty-four hours—to ascertain the state of accounts between himself and the drawer, and until expiration of that time the holder has no right to demand an answer, nor, without categorical answer, to deem the bill either accepted or dishonored; not accepted, because 'of the right of drawee to consider before he binds himself; not dishonored, because both drawer and drawee have the right that their paper be not discredited during such period of investigation. After the expiration of that reasonable time the holder has a right to know whether the drawee assumes liability to him by accepting, and, if not, he has a right to return of the document, so that he may protest or otherwise proceed to preserve his rights against the drawer.

The consensus of authority is, however, that the duty rests on the holder to demand either acceptance or return of the bill, and that mere inaction on the part of the drawee has no effect. After the expiration of this time for investigation, the drawee may, by retention of the bill, accompanied by other circumstances, become bound as an acceptor; not, however, by mere retention. There seem to be two phases of conduct recognized by the authorities as charging the drawee: one purely contractual, as where the retention is accompanied by such custom, promise, or notification as to warrant the holder, to the knowledge of the drawee, in understanding that the retention declares acceptance; the other, where the conduct of the drawee is substantially tortious and amounts to a conversion of the bill. This is the phase of conduct which our negotiable instrument statute (sec. 1680$k$, ch. 356, Laws of 1899) has undertaken to define and limit as refusal (not mere neglect) to return the bill, or destruction of it; reiterating the common-law rule that mere retention of the bill is not acceptance. *Overman v. Hoboken Bank,* 31 N. J. Law, 563; *McEowen & Co. v. Scott,* 49 Vt. 376; *Colo. Nat. Bank v. Boettcher,* 5 Colo. 185; *Dickinson v. Marsh,* 57 Mo. App. 566; *Dunavan v. Flynn,* 118 Mass. 537; *Holbrook v. Payne,* 151 Mass. 383, 24 N. E. 210; *Gates v. Eno,* 4 Hun, 96; *Matteson v. Moulton,* 11 Hun, 268, affirmed 79 N. Y. 627; *Hall v. Steel,* 68 Ill. 231; *First Nat. Bank v. McMichael,* 106 Pa. St. 460; *Koch v. Howell,* 6 Watts & S. 350; *Short v. Blount,* 99 N. C. 49, 5 S. E. 190; *Boyce v. Edwards,* 4 Pet. 111; *Bank of the Republic v. Millard,* 10 Wall. 152; 1 Daniel, Neg. Inst. §§ 499, 500. The doctrine of constructive acceptance is based on the general principles of estoppel. If the conduct of the drawee will prejudice the existing rights of the holder, unless it means acceptance, and the drawee has knowledge of such fact, he is estopped to deny the only purpose which could render his conduct innocuous; namely, acceptance of the bill. This underlying principle suggests the

reasons for many of the limitations upon the implication of acceptance from conduct; as, for example, that such implication arises only when the bill is presented *for acceptance,* and that no one but the holder (payee or indorsee) can make such technical presentment. 2 Randolph, Comm. Paper, §§ 568, 572; 1 Daniel, Neg. Inst. § 455; sec. 1681—2, Neg. Inst. Law Wis. ch. 356, Laws of 1899. Only when the drawee knows that acceptance is expected would he suppose that his conduct can lead to a belief that he does accept. Only when the presentment is by the holder, whose conduct and rights must be affected by acceptance or refusal, is the drawee charged by the strict rules of the law merchant with notice that his conduct may so injuriously affect the person delivering the bill to him.

In the light of these rules of law it is at once apparent that the verdict alone does not present sufficient facts to charge defendant with constructive acceptance. Not only must he have received the bill, as the jury found, but he must knowingly have received it from the payee or his authorized agent, and *for acceptance;* and even then there must have been something more than mere retention—either destruction or refusal to return to the holder, if within the negotiable instrument statute, or some circumstances, contractual or tortious, to arouse estoppel, if, by reason of nonnegotiability, this instrument is governed only by the common law. We must, therefore, turn to the evidence to ascertain whether all these necessary additional facts were established beyond controversy. True, the court filed so-called findings of fact declaring some of them to exist, but, as appellant claimed that the fact of acceptance should be submitted to the jury, it did not consent that the court might assume to decide either the facts or the inferences therefrom, unless free from controversy.

The only evidence of the manner and purpose of the sending of this draft is that the drawer sent it in the same inclosure with numerous other documents similar in form, with

which plaintiff had no connection. The contents of the accompanying letter are not disclosed, but it is reasonably clear that the other orders were not sent for acceptance on behalf of the payees therein, but merely as vouchers between the drawer and drawee; for, evidently as expected, the latter sent money in response thereto direct to the drawer. The plaintiff's order or draft, having no time of payment expressed, was payable on demand, and did not need to be presented for acceptance, and therefore did not of itself suggest any demand for such action. 1 Randolph, Comm. Paper, § 119; 1 Daniel, Neg. Inst. § 454. The witness Lien testified, "I mailed it in behalf of the Lien-Neally Lumber Co." Plaintiff said: "I didn't mail it myself. Lien said he would mail it. I left it to him." And again: "I was expecting money on this draft. Mr. Lien said he would send the money down to me." This is the substance of all the evidence as to the circumstances under which this paper came to the hands of the defendant. We need not say more than that, instead of conclusively establishing, as the court found, that "the *plaintiff* delivered the said order *for acceptance* to the defendant," it quite as much tends to show the contrary, namely, that the drawer, with consent of plaintiff, sent it as a voucher for money expected to be remitted to that corporation and by it paid over to plaintiff. There is no particle of evidence to establish existence of any communication or circumstance which could suggest to defendant that plaintiff sent it or authorized its sending, that any acceptance was demanded or expected, or that plaintiff's relations with the drawer would be affected by silence.

If, however, both of these questions could be answered in the affirmative, there would still remain the question of fact whether defendant's conduct was such as to warrant inference or implication of acceptance. There is no direct evidence of anything except long-continued retention of the draft, and no evidence that any demand was ever made, either for decision

as to acceptance or for return. The court sought to meet this question by its finding that defendant destroyed the draft. Of this there is no direct proof, the sole evidence on the subject being that of defendant's agent that he had no recollection about it, and did not know whether or not it was among papers in defendant's Chicago office. Whether this might have warranted the jury in so doing, it certainly was not so wholly inconsistent with any other as to require the court to raise the inference of destruction as matter of law.

Hence we must conclude that there were at least three questions of fact on which the jury were not permitted to decide, as to which the evidence and inferences were not beyond controversy, at least in favor of plaintiff. Whether there was any evidence to support such a decision we need not decide, for there was no motion, after verdict, for judgment in defendant's favor. A new trial must, therefore, be directed.

As a guide to the court and parties upon such new trial it seems important that we declare whether the instrument in suit is within the purview and control of our negotiable instrument law, above cited. Whether such paper continues to be a bill of exchange in pursuance of our earlier decisions (*Mehlberg v. Tisher,* 24 Wis. 607; *Schierl v. Baumel,* 75 Wis. 69, 43 N. W. 724), it certainly is not a negotiable bill within the definition of sec. 1680, Stats. 1898, as amended by ch. 356, Laws of 1899, which requires that such an instrument shall be payable to order or bearer. It seems clear from the title that the codifying law of 1899 is intended to regulate only negotiable instruments. Selover, Neg. Inst. Laws, § 2. It therefore does not affect or control the rights of the parties upon this paper.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.