## COMMERCIAL STATE BANK OF FORT WORTH v. HARKRIDER–KEITH–COOKE CO. (No. 10112.)*

(Court of Civil Appeals of Texas. Fort Worth. March 3, 1923. Rehearing. Denied April 7, 1923.)

1. **Bills and notes ⬥70—Retention by drawee of "check" for more than 24 hours is acceptance.**

Under Negotiable Instruments Act, § 185 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—185), defining a check as a bill of exchange drawn on a bank, and making applicable thereto provisions applicable to a bill of exchange payable on demand, except as therein otherwise provided, the provision of section 137 (art. 6001—137) that a drawee to whom a bill of exchange is delivered for acceptance, who refuses within 24 hours to return it to the holder, will be deemed to have accepted it, applies to a check, so that the bank on which the check was drawn is liable to the payee, if it fails to return the check because of insufficient funds within 24 hours after it is presented to the bank.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Check.]

2. **Bills and notes ⬥15—Provisions of Negotiable Instruments Act applicable to bills of exchange apply to checks; "bill of exchange."**

A bank check is negotiable under Negotiable Instruments Act, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—1), and is a bill of exchange under section 125 (art. 6001—125), defining a bill of exchange, and section 185 (art. 6001—185) defining a check, so that, under the provision of the latter section that provisions applicable to a bill of exchange payable on demand apply to a check, other sections of the act, which apparently refer more particularly to bills of exchange, also apply to checks, unless otherwise provided.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Exchange.]

3. **Bills and notes ⬥395—Payee of check deposited for collection is entitled to notice of dishonor.**

The payee of a bank check, who indorsed it and deposited it in his bank for collection, is entitled to notice of dishonor of the check under Negotiable Instruments Act, § 89 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—89), which must be given in the manner and time prescribed by sections 91, 102 (arts. 6001—91, 6001—102), since none of the provisions of section 115 (art. 6001—115), excusing the notice of dishonor in certain cases, applies to that situation.

4. **Bills and notes ⬥70—Failure of drawee bank to return dishonored check within 24 hours held to make it liable to payee.**

Where the payee of a bank check deposited it in his bank for collection, and his bank presented it to the drawee bank through the clearing house for payment, the retention of the check by the drawee bank for more than the period within which notice of dishonor was required to be given the payee before it was returned to payee's agent unpaid for lack of funds, during which time the drawer of the check made an assignment for benefit of creditors so as to prevent the payee from protecting himself, rendered the drawee bank thereby liable to the payee for the amount of the check.

Appeal from Tarrant County Court; P. W. Seward, Judge.

Action by the Harkrider-Keith-Cooke Company against the Commercial State Bank of Fort Worth. Judgment for plaintiff, and defendant appeals. Affirmed.

Samuels & Brown, of Fort Worth, for appellant.

Bryan-Stone-Wade & Agerton and J. C. Hyer, all of Fort Worth, for appellee.

CONNER, C. J. This appeal is from a judgment of the county court, on an appeal from the justice court, for the sum of $146.77, in favor of Harkrider-Keith-Cooke Company, a corporation, against the Commercial State Bank of Fort Worth, Tex., also a corporation, both having their domiciles in the city of Fort Worth, Tex.

The judgment rests upon the following conclusions, filed by the trial judge upon the request of the parties:

### "Findings of Fact.

"(1) That on April 19, 1920, Mack & Rogers issued a check in favor of plaintiff, Harkrider-Keith-Cooke Company, a corporation, in the amount of $157.90, the check upon which suit is brought herein, and drawn upon the Commercial State Bank of Fort Worth, Tex., a corporation.

"(2) That on April 19, 1920, plaintiff placed said check in the Fort Worth National Bank of Fort Worth, Tex., where plaintiff did its banking with the request that the check be sent forward to the defendant bank for payment. That the Fort Worth National Bank cleared the said check on defendant bank on April 20, 1920, for payment in the due course of business, and the check was delivered to the messenger of the defendant bank at the clearing house at about noon or shortly thereafter on April 20, at which time the check was in the hands of the officers of the defendant bank.

"(3) That April 21st, the following day, was San Jacinto day and a bank holiday. That the following day, April 22, 1920, the check was held by the defendant bank without any action being taken thereon, or any notice given either the plaintiff or the Fort Worth National Bank. That on April 23, 1920, at 11 o'clock, the check was cleared back through the clearing house on the Fort Worth National Bank marked "insufficient funds." That the Fort Worth National Bank notified plaintiff on April 24, 1920, which was Saturday, and Monday Mack & Rogers made an assignment for the benefit of their creditors.

"(4) That since the institution of this suit

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction May 23, 1923.

a credit has been allowed Mack & Rogers which reduces this claim from $157.90 to $146.77.

"(5) That the defendant bank failed to return the check accepted or nonaccepted to the Fort Worth National Bank or to the plaintiff within the 24 hours after delivery to it.

## "Conclusions of Law.

"Based upon the foregoing findings of facts, the court makes the following conclusions of law:

"(1) Under article 6001a137, Complete Texas Statutes, 1920 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—137), which provides that 'where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted, or nonaccepted, to the holder, he will be deemed to have accepted the same.'

"The defendant bank has failed to return the said check accepted or nonaccepted to the plaintiff or the agent bank within 24 hours, and defendant bank is deemed to have accepted the same and to have become liable for the amount thereof.              P. W. Seward, Judge."

The findings of facts are not questioned, but appellant assigns error to the court's conclusions of law and to the judgment, and presents the following propositions, to wit:

"(1) The presentment of a check to the bank on which it is drawn for payment is not a presentment of a bill of exchange for acceptance.

"(2) When a bank receives, through a clearing house, for payment, a check drawn on it, and it does not return the check to the clearing house within 24 hours, it does not thereby become liable to the payee in said check as the acceptor of a bill of exchange.

"(3) When a check is presented for payment to the bank on which it is drawn and payment is refused for insufficient funds, but the bank does not return the check in 24 hours, no demand for the return of the check having been made, a court is not justified in rendering judgment in favor of the payee in the check against the bank, because the bank is not liable as acceptor of a bill of exchange."

In 1919 our Legislature enacted what is designated as the Negotiable Instruments Act, which may be found in the Complete Texas Statutes of 1920, article 6001a1 to 6001a197, inclusive (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—1 to 6001—197). The court's conclusions of law and judgment are, as alleged, dependent upon the proper construction of section 137 of the article referred to in the court's conclusions, appellant contending, as indicated by his propositions hereinbefore quoted, and appellee insisting, that all provisions of the Negotiable Instruments Act applicable to bills of exchange likewise apply to checks payable on demand, and that, when such check is presented to the drawee bank for payment and retained more than 24 hours, it is deemed to have accepted it and becomes liable to the holder.

The authorities do not seem to be in harmony. Those cited in support of appellant's contentions that we have been able to find in our library are the following: American National Bank v. Fertilizer Co., 125 Tenn. 328, 143 S. W. 597; Westberg v. Chicago Lumber & Coal Co., 117 Wis. 589, 94 N. W. 572; St. L. S. W. Ry. Co. v. James, 78 Ark. 490, 95 S. W. 804, 8 Ann. Cas. 611; Elyria Savings & Banking Co. v. Walker Bin Co., 92 Ohio St. 406, 111 N. E. 147, L. R. A. 1916D, 433, Ann. Cas. 1917B, 1055; First National Bank v. Whitman, 94 U. S. 343, 24 L. Ed. 229; Lone Star Trucking Co. v. City National Bank of Commerce (Tex. Civ. App.) 240 S. W. 1000.

The case of American National Bank v. Fertilizer Company was determined by the Supreme Court of Tennessee. That court held that an indorsement of the payee on a check to a bank constituted the payee an indorsee within the meaning of the Negotiable Instruments Act, and as such entitled to notice of the dishonor of the check, and that a failure to give such notice discharged the indorser, but that such discharge did not relieve the indorser from liability of the indorsee on the ground that it affirmatively appeared that the indorser had not been prejudiced by the failure to receive notice of the dishonor, indicating that the burden to so show was on the party failing to give notice.

The case of Westberg v. Chicago Lumber & Coal Co. was by the Supreme Court of Wisconsin. That court cited the common law and cases to the effect that mere retention of a bill of exchange would not bind the drawee as an acceptor. But the instrument there discussed was nonnegotiable, and hence not within the provisions (including section 137) of the Negotiable Instruments Act.

The case of St. L. S. W. Ry. Co. v. James, 78 Ark. 490, 95 S. W. 804, 8 Ann. Cas. 611, by the Supreme Court of Arkansas, is a case wherein certain board orders by workmen were presented to a contractor for payment by the payee. The orders do not appear to have been payable to the contractor unconditionally, so as to constitute them negotiable instruments within the meaning of section 1 of the Negotiable Instruments Act, but were payable only when and as the laborers had wages due them. Moreover, it appears that by the consent of the payee orders by an employee to whom nothing was due were sometimes retained by the contractor when the maker was still in its employ until wages became due. The court, however, in holding that the contractor was not liable on retained orders, for the return of which no demand has been made by the payee, did announce the rule under the Arkansas statutes as in accord with appellant's contention in this case.

In the case of Elyria Savings & Banking

Co. v. Walker Bin Co., by the Supreme Court of Ohio, and Lone Star Trucking Co. v. City National Bank of Commerce, 240 S. W. 1000, by the Amarillo Court of Civil Appeals, and the First National Bank v. Whitman, by the Supreme Court of U. S., cited above, all discussed and determined the question of whether the retention of a check by a drawee bank, after payment on a forged indorsement, amounted to an acceptance under the section of the Negotiable Instruments Act we have under consideration, and it was held in those cases that failure to return the check within the time limit of the section was not an acceptance under such circumstances.

The case of First National Bank v. Whitman, by the U. S. Circuit Court of Appeals for the Eighth District, was in favor of the drawee bank on the ground that the plaintiff had not discharged the burden of proof to show that the drafts were negotiable or actually presented to the drawee for acceptance.

In the foregoing cases will be found discussions pointing out a distinction between a presentation for payment and a presentation for acceptance, and expressions favorable to the contention of appellant, but all of them, we think, are distinguishable from the case before us in the questions actually determined. In other authorities we have consulted we find that one or more of the states, in adopting the Negotiable Instruments Act, specially provided that a mere retention of a negotiable instrument by the payee will not amount to an acceptance, but we have no such limitation in the statutes as adopted by our Legislature. In some cases the statutes relating to the subject are not given, so that it has been difficult to determine the weight that should be given some of the discussions and authorities supporting appellant's propositions.

[1] We have finally concluded that the case of Wisner v. First National Bank of Gallitzin, 220 Pa. 21, 68 Atl. 955, 17 L. R. A. (N. S.) 1266, by the Supreme Court of Pennsylvania, is more nearly in point and more satisfactory in its reasonings and conclusions than any other authority we have been able to find. That was a case in which one Bullock drew six checks on the defendant bank in favor of Chas. W. Gallaer, Jr., who deposited them in the plaintiff bank in New York City, which credited them to Gallaer's account in that bank, and the action was one of assumpsit brought by the plaintiff, the holder of the checks, to recover the amount of the checks, on the ground that the drawee bank, the defendant, had accepted the checks by its refusal and failure to return them within 24 hours after their receipt, as required by section 137 of Negotiable Instruments Act. In disposing of the case, the court, among other things, had this to say:

"The contention of the defendant that section 137 of the act does not apply to a check presented to the drawee bank for payment is answered adversely to its position by the act itself. Section 185, P. L. 219 (3 Purdon's Dig. [13th Ed.] p. 3314; Pa. St. 1920, § 16182), provides as follows: 'A check is a bill of exchange drawn on the bank, payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check.' No provision of the act has been pointed out, and we know of none, making section 137 inapplicable to bank checks presented for payment. On the contrary, there is every reason why the section should apply, and the drawee should give prompt notice of acceptance or refusal. The reasons for such notice are pointed out in First Nat. Bank v. McMichael, supra. The holder of a check is interested in knowing at the earliest time whether the drawer has sufficient funds in the bank for payment of the check, and especially should he be advised as promptly as possible if the drawer has no funds that the check is to be dishonored. Delay in furnishing this information may result in the loss of the amount of the check to the holder. We think it apparent that it is quite as important to have a check, payable on demand, returned promptly to the holder, as to require the prompt return of an ordinary bill of exchange. As the act of 1901 abolishes implied acceptances of bills and checks, and thereby changes the law as declared by this court, there is no protection for the holder against unreasonable detention of a check by the drawee bank if this section does not apply."

The sections 137 and 185, cited in the above quotation, are the same as the sections 137 and 185 as found in the Negotiable Instruments Act, adopted by this state. The court concluded:

"We are of the opinion that, under section 137 of the Negotiable Instruments Law of this state, the failure or neglect of a drawee to whom a bill is delivered for acceptance to return the bill, accepted or nonaccepted, to the holder within 24 hours after delivery, makes the drawee an acceptor of the bill. It therefore follows in the case in hand that, the defendant bank having failed to return the five checks to the collecting bank within 24 hours after their delivery to the drawee, the latter must be deemed to have accepted the checks, and is therefore liable to the plaintiff for the amount of them."

The decision contains other reasoning and citations of authority upon which the court based its conclusion that seems to constitute a sufficient answer to every contention made by appellant in this case, and we felt tempted to quote much more freely, but, because of its length and its ready availability, we content ourselves by making what the court there said a part of this opinion by reference only, and conclude that the opinion and the authorities therein cited, and authorities also cited in the note to the case, fully and satisfactorily, as we think, supports the trial court's conclusions of law and judgment.

See, also, Kirkpatrick v. Puryear, 93 Tenn. 409, 24 S. W. 1130, 22 L. R. A. 785, and cases cited in notes.

[2] There is another view of the facts found by the court, which, although not made the basis of the trial court's conclusions of law, we are at least inclined to think also supports the court's judgment. Section 126 of the Negotiable Instruments Act, as adopted by this state, thus defines a bill of exchange:

"A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer."

Section 185 of the act thus defines a check:

"A check is a bill of exchange drawn on a bank, payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

Section 1 of the act declares that an instrument, to be negotiable, must conform to the following requirements:

"1. It must be in writing and signed by the maker or drawer;
"2. It must contain an unconditional promise or order to pay a sum certain in money;
"3. Must be payable on demand, or at a fixed or determinable future time;
"4. Must be payable to order or to bearer; and
"5. Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

From the foregoing sections, it is undoubtedly true that the check involved in the present controversy was a negotiable instrument, and that other sections of the act which may apparently refer more particularly to bills of exchange, also apply to checks, unless otherwise provided in the act.

[3] Section 89 of the act provides:

"Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

Section 91 provides that the notice of the dishonor may be given by an agent either in his own name or in the name of any party entitled to give notice, and that (section 94) where the instrument has been dishonored in the hands of an agent, he may either himself give notice to the parties liable thereon, or he may give notice to his principal.

Section 102 provides:

"Notice may be given as soon as the instrument is dishonored; and unless delay is excused as hereinafter provided, must be given within the time fixed by this act."

The time fixed by the act, as applicable to the parties involved in this controversy, is given in section 103, which reads:

"Where the person giving and the person to receive notice reside in the same place, notice must be given within the following times:
"1. If given at the place of business of the person to receive notice, it must be given before the close of business hours on the day following.
"2. If given at his residence, it must be given before the usual hours of rest on the day following.
"3. If sent by mail, it must be deposited in the post office in time to reach him in usual course on the day following."

By reference to section 191, it will be seen that the holder of a check or negotiable instrument means the payee or an indorsee thereof, and hence the Harkrider-Keith-Cooke Company was undoubtedly the holder of the check in controversy and as such was entitled to notice of its dishonor, unless excused under the terms of the act, and no excuse available under the act is presented in the findings of the court or in the evidence accompanying the record. While notice of the drawer to the maker of a negotiable instrument is excused under certain circumstances not necessary here to refer to, it is provided in section 115 that:

"Notice of dishonor is not required to be given to an indorser in either of the following cases:
"1. Where the drawee is a fictitious person or a person not having capacity to contract, and the indorser was aware of the fact at the time he indorsed the instrument;
"2. Where the indorser is the person to whom the instrument is presented for payment;
"3. Where the instrument was made or accepted for his accommodation."

From which it must be implied, to harmonize with the maxim expressio unius, exclusio alterius est, that under all other circumstances notice to the drawer or holder is imperative.

[4] It follows that, upon the deposit of the check in question by the Harkrider-Keith-Cooke Company in the Fort Worth National Bank, the latter was at least the agent of the former for its collection and that had the defendant, the Commercial State Bank, in due course, returned the check as contemplated by the rules of the clearing house association and the spirit of the Negotiable Instruments Act, the Harkrider-Keith-Cooke Company would have had notice of its dishonor and been enabled to avail itself of the remedies for the collection of the check against the drawer, which, as shown by the findings and evidence, made an assignment of all of its property prior to any opportunity on the part of the payee, the Harkrider-Keith-Cooke Company, to protect itself, and we see no reason why the failure of the appellant bank to so re-

turn the check and so give notice of its dishonor does not make it liable to the appellee. See Kirkpatrick v. Puryear, 93 Tenn. 409, 24 S. W. 1130, 22 L. R. A. 785; Daniel on Negotiable Instruments, § 971.

We accordingly overrule appellant's assignments and propositions, and adopt the trial court's conclusions of fact and law, and affirm the judgment.