CHARLES WHITNEY & another *vs.* ELIOT NATIONAL BANK & others.

Suffolk.     November 23, 1883. — June 28, 1884.

A draft for a certain sum, drawn by one person upon another, payable at sight to the order of a bank named, and containing the direction to charge the same to a certain account, is a negotiable bill of exchange, not payable out of a particular fund, and does not constitute an assignment of the fund.

A. shipped a quantity of goods to B., and drew two drafts on him, each for one half of the amount, in favor of a bank, which discounted the drafts, though no bill of lading was attached thereto. B., instead of accepting the drafts on presentation, remitted the amount in money to A. The same mail which brought the remittance to A. brought notice of the protest of the drafts for non-acceptance, and of disaster to certain property of A. A. thereupon suspended payment, and deposited the money received from B. in the hands of C., "for the benefit of whom it might concern." Before procuring the drafts to be discounted, A. received directions from B. not to draw upon him, but this was not known to the bank until some time after the drafts were discounted. B. was notified, before he remitted the money to A., that A. had drawn upon him for the amount of the consignment. *Held,* on a bill of interpleader by C., that the assignee in insolvency of A., and not the bank, was entitled to the money deposited with C.

BILL OF INTERPLEADER, filed May 9, 1883, against the Eliot National Bank, and James N. Smith and Charles H. Northam, copartners doing business under the firm name of Smith, Northam, and Company, to determine the ownership of a sum of money deposited with the plaintiffs.

The bill alleged that, on March 21, 1883, the firm of Hatheway and Company, doing business in Boston, in this Commonwealth,

placed in the hands of the plaintiffs the sum of $1590 for the benefit of whom it might concern; that said sum was the amount received by said firm from George Morrison, of St. John, New Brunswick, hereinafter referred to; that said firm, on March 16 and 17, having theretofore shipped to Morrison 500 barrels of meal, by schooner Aurora Borealis, for which the sum of $1590 was to be paid to said firm by Morrison, made two drafts in favor of the Eliot National Bank of Boston, for the sum of $795 each, upon Morrison, chargeable "to 250 bbls. meal, ex. Aurora Borealis, account of Hatheway & Co.;" that said bank discounted the drafts upon the information that the meal had been sold and shipped, and the belief that Morrison would accept and pay the drafts to the bank; that Morrison, instead of accepting the drafts on the date of presentation, remitted said sum of $1590 to Hatheway and Company; that the same mail which brought said remittance to Hatheway and Company, brought notice of the protest of the drafts for non-acceptance, and of a disaster to the steamship City Point, a vessel owned largely by said firm; and said firm thereupon suspended payment and has not since resumed; that Hatheway and Company purchased the lot of meal in question of Smith, Northam, and Company, a copartnership doing business at Hartford, Connecticut, immediately before selling the same to Morrison; that the Eliot National Bank and the firm of Smith, Northam, and Company claimed said money in the plaintiffs' hands, and both threatened to bring suit therefor and to attach the same in the hands of the plaintiffs; and the plaintiffs were willing and desirous to pay said money to the person or persons entitled to receive the same, and offered to pay the same into court.

The answer of the Eliot National Bank alleged that the firm of Hatheway and Company, on March 16 and 17, 1883, having theretofore shipped to said Morrison 500 barrels of meal under the circumstances alleged in the bill, procured to be discounted at said bank two drafts, each of which, dated respectively March 16 and 17, 1883, was as follows: "$795.00.  At sight, pay to the order of the Eliot National Bank seven hundred and ninety-five dollars, value received, and charge the same to account of 250 bbls. meal ex schooner 'Aurora Borealis.'  Hatheway & Co.  To Geo. Morrison, Esq., St. John, N. B.;" that the

proceeds derived from the discounting of the same were immediately placed to the credit of the firm of Hatheway and Company, who had an account with said bank as a customer thereof; that, previously to the procuring of the drafts to be discounted, Hatheway and Company had received directions from Morrison not to draw upon him for this consignment of meal; that Hatheway and Company omitted and failed to communicate the fact of said directions at the times that they procured the drafts to be discounted; and that it was a considerable time thereafter before the bank came to a knowledge thereof.

Charles G. Dyer, assignee in insolvency of Hatheway and Company, filed a motion that he might be admitted as a defendant in the case, for the reason that the sum of money held by the plaintiffs belonged to him as such assignee, for the benefit of the creditors of the insolvent firm. This motion was allowed; and Dyer filed an answer alleging, among other things, that said drafts were not attached to any bill of lading; that, on March 21, Hatheway and Company received from Morrison, two checks, one for $990, drawn by the Bank of New Brunswick on said Eliot National Bank, and one for $600, drawn by the Halifax Banking Company on the Suffolk National Bank of Boston, in favor of Hatheway and Company; that these checks were the moneys deposited with the plaintiffs by Hatheway and Company for the benefit of whom it might concern; and that the checks have, since said depositing, been converted into money by the plaintiffs; denied that the same mail which brought said checks from Morrison also brought information of the dishonor of said drafts; but stated that he believed upon information that, at the time of the remittance, only the first draft had been presented for acceptance, and that the second draft was not presented until the day after said remittance; and denied that said checks were not placed in the mail until after both of said drafts had been presented for payment or acceptance.

It was agreed that the averments in the bill, and in the answers of the Eliot National Bank, and of Charles G. Dyer, assignee in insolvency, should be taken to be true, except as controlled by the following agreed statement of facts:

The petition in insolvency of Hatheway and Company was not filed until about three weeks after this bill of interpleader

was filed. The two checks received as the remittance from Morrison were immediately deposited in bank upon being received by the stakeholders, and became immediately converted into money. Said remittance was made before the second draft was presented, and after the first draft had been presented, but Morrison had received advices from Hatheway and Company, before he made the remittance to Hatheway and Company, that the latter had drawn upon him for the price of the consignment. Hatheway and Company received the two checks on March 21, and immediately placed them in the hands of the stakeholders. The Eliot National Bank learned the same day that Hatheway and Company had received the remittance, but not until after the same had been placed in the hands of the stakeholders; and, immediately upon obtaining said information, demanded of Hatheway and Company that they should pay over the amount directly to the bank.

At the hearing, before *Colburn*, J., it was ordered that the bill be taken for confessed against the defendants Smith and Northam; and the case was reserved for the consideration of the full court on the bill, answers, and agreed facts; such decree to be entered as law and justice might require.

*F. Goodwin*, for the Eliot National Bank.

*G. R. Swasey*, for Dyer.

FIELD, J. The bill has been taken as confessed against Smith and Northam; and it is manifest that, upon the allegations of the bill, they are not entitled to the money. They sold the meal to Hatheway and Company; but it does not appear that the title did not pass to Hatheway and Company by this sale, and no facts appear which give Smith, Northam, and Company any lien upon the proceeds of the sale made by Hatheway and Company to Morrison. If the drafts or bills of exchange constitute an assignment of the debt due, or to become due, to Hatheway and Company from Morrison, Hatheway and Company received the two checks sent by Morrison to the use of the bank; but if there has been no assignment, they received the checks to their own use, although they may be personally liable to the bank as drawers. The bank has acquired no additional rights to the money from the fact that Hatheway and Company placed the checks in the hands of the plaintiffs

for the benefit of whom it might concern; and, under the facts in the case, the bank has lost none of its rights to the money in the hands of the plaintiffs, if it acquired any, by discounting the bills of exchange. The delivery of the checks to the plaintiffs was not an assignment to the bank. Hatheway and Company, having suspended payment, might well be in doubt whether the checks belonged to the bank, or to themselves, and might well hesitate whether to collect them and mingle the proceeds with their other assets, or to deliver them to the bank, and thus perhaps run the risk of being refused a discharge in insolvency, if they became insolvent debtors. They therefore delivered the checks to the plaintiffs, in order that the rights of the different claimants to receive the proceeds of them might be determined by law.

The drafts or bills of exchange are in the ordinary form of negotiable sight bills, except that they each contain the direction to " charge the same to account of 250 bbls. meal ex schooner Aurora Borealis." This direction to charge the amount of the bills to a particular account, we think, does not make them payable conditionally, or out of a particular fund; they are still payable absolutely, and are negotiable, and do not constitute an assignment of a particular fund, or of a part of a particular fund. *Robey & Co.'s Perseverance Iron Works* v. *Ollier*, L. R. 7 Ch. 695. *In re Entwistle*, 3 Ch. D. 477. *Griffin* v. *Weatherby*, L. R. 3 Q. B. 753. *Banner* v. *Johnston*, L. R. 5 H. L. 157. *Haussoullier* v. *Hartsinck*, 7 T. R. 733. *Macleed* v. *Snee*, 2 Stra. 762. *Wells* v. *Brigham*, 6 Cush. 6. *Redman* v. *Adams*, 51 Maine, 429. *Corbett* v. *Clark*, 45 Wis. 403. *Coursin* v. *Ledlie*, 31 Penn. St. 506. *Kelley* v. *Brooklyn*, 4 Hill (N. Y.) 263. *Early* v. *McCart*, 2 Dana, 414. *Spurgin* v. *McPheeters*, 42 Ind. 527.

In *Brill* v. *Tuttle*, 81 N. Y. 454, some of the New York cases are reviewed, and it is held that, when the language is ambiguous and the order not negotiable, " the attendant circumstances may be shown to determine the intention and understanding of the parties," but the case does not purport to be an authority, if the order is in form a negotiable bill of exchange. See *Wheeler* v. *Souther*, 4 Cush. 606.

In the case at bar, the two drafts were drawn on different days, and although, taken together, they are equal to the whole

amount due, or to become due, from Morrison for five hundred barrels of meal, each is drawn for a certain sum of money, which is in fact one half of the debt, and is to be charged to the account of two hundred and fifty barrels of the meal.  Either standing alone would not, in an action at law, constitute an assignment of the sum of money expressed in it, as it is for a part of the debt due from Morrison.  *Gibson* v. *Cooke*, 20 Pick. 15. *Palmer* v. *Merrill*, 6 Cush. 282.  *Bullard* v. *Randall*, 1 Gray, 605.  *Dana* v. *Third National Bank*, 13 Allen, 445.  *Carr* v. *Security National Bank*, 107 Mass. 45.  The dictum in *Gibson* v. *Cooke*, *ubi supra*, that "a draft by the creditor on his debtor in the form of a bill of exchange, to the amount of the debt or the whole fund in his hands, is a good and valid assignment of the debt, or fund," is qualified in *Dana* v. *Third National Bank*, as perhaps meaning "a draft on a particular fund," and, so qualified, is said to be "undeniably correct."  If, under this view of the law, the first draft, on being discounted, assigned to the bank no part of the debt, the second draft would not be an order for the whole amount of the debt, and it is difficult to see how, taken together, the drafts would, in an action at law, constitute an assignment of the whole debt; but we do not intend to put the decision on this ground, or to decide whether in equity there may not be an assignment of a part of a debt.  See *Exchange Bank* v. *McLoon*, 73 Maine, 498.  For the reason given in the cases first cited, we think these drafts are negotiable bills of exchange, not payable out of a particular fund, and do not constitute an assignment of the fund.

It is agreed that Morrison directed Hatheway and Company "not to draw upon him for this consignment of meal," but that this was not communicated to the bank until a considerable time after the drafts were discounted, and that the bill of lading was not attached to the drafts.  It does not appear that the bill of lading was ever delivered, or intended to be delivered, to the bank.  Morrison was therefore under no obligation to accept the bills of exchange, although Hatheway and Company notified him that they had drawn upon him for the price of the consignment before he sent the checks.  It does not appear that he had received notice that the draft, or drafts, had been discounted. No property, general or special, in the meal was transferred to

the bank; and there are no facts from which an agreement can be inferred, between Hatheway and Company and the bank, that the debt due, or to become due, from Morrison should be assigned to the bank, or that the bank should have a specific charge upon it. *Robey & Co.'s Perseverance Iron Works* v. *Ollier, ubi supra. In re Entwistle, ubi supra. Ranken* v. *Alfaro,* 5 Ch. D. 786.

For these reasons, a majority of the court are of opinion that there must be a decree that the money in the hands of the plaintiffs be paid to the assignee in insolvency.

*So ordered.*