EDWARD B. JAMES *vs.* CITY OF NEWTON & another.

Middlesex. Jan. 25. — Sept. 7, 1886. HOLMES & GARDNER, JJ., absent.

An assignment for value, without the consent of the debtor, of a part of a debt due under an existing contract between the debtor and the assignor, may be enforced by a bill in equity by the assignee against the debtor and the assignee in insolvency of the assignor, although the debtor is a municipal corporation, if the debtor in its answer admits that the debt is due, and asks that the rights of the different claimants of the fund be determined by the court.

A., who was erecting a building under a contract in writing with B., became insolvent, and a majority of his creditors voted to accept his offer to pay a certain sum on the dollar in full settlement of their claims. C., with full knowledge of these facts, lent him a sum of money to enable him to complete his contract with B. and to fulfil his agreement of compromise with his creditors, and took from him an assignment, under seal, of an equivalent sum due under the contract. A. expended most of the money received from C. for the purpose for which it was borrowed. By reason of the refusal of certain creditors to accept the amount offered, A. filed a petition in insolvency, five days after the assignment was executed, and an assignee of his estate was appointed. *Held,* that the assignment by A. to C. was not made in fraud of the insolvent law.

BILL IN EQUITY, filed June 24, 1885, against the city of Newton and Royal Gilkey, assignee in insolvency of the estate of William H. Stewart, alleging the following facts :

William H. Stewart, on August 14, 1883, entered into a contract in writing with the city of Newton to build a school-house for said city upon the terms and conditions set forth in said contract.*

---

* By the terms of the contract, a copy of which was annexed to the bill, Stewart agreed to build the school-house, according to certain plans and specifications, the building to be completed on or before May 1, 1884, for

Stewart thereupon entered upon the performance of his part of said contract, and had nearly fulfilled the same, when, he becoming financially embarrassed, on June 13, 1884, a meeting of his creditors was held, and they voted to accept his offer of twenty cents on the dollar in full settlement of their respective claims.

On June 21, 1884, for the purpose of enabling him to carry out his contract with the city, and to fulfil his agreement with his creditors, Stewart applied to the plaintiff for a loan of money, whereupon the plaintiff, in good faith and for the purpose aforesaid, lent him the sum of $575, and took the following instrument, executed by Stewart: " Know all men by these presents, that I, William H. Stewart, of Newton, in the Commonwealth of Massachusetts, in consideration of six hundred dollars to be paid by Edward B. James of Cambridge in said Commonwealth, the receipt whereof is hereby acknowledged, do hereby sell, assign, transfer, and make over to the said James the sum of six hundred dollars now due and to become due and payable to me from the city of Newton in said Commonwealth, under and by virtue of a contract between the said city and myself for building a grammar school-house, dated August 14, 1883. It is agreed that said sum of six hundred dollars shall be paid out of the money reserved as a guaranty by said city, and at the time the same would become payable to me according to the terms of said contract, and that I shall finish the said building and perform my part of said contract according to its terms. To have and to hold the same to the said Edward B. James, with power to collect the same in my name and as my attorney, hereunto duly authorized, to his own use." The plaintiff immediately notified the city of said assignment.

On June 26, 1884, Stewart, by reason of the refusal of certain creditors to accept said twenty cents on the dollar, filed a petition in insolvency, and on July 10, 1884, Royal Gilkey was duly elected assignee of his estate. Before and after the filing of said petition, Stewart expended the greater portion of said $575

---

the sum of $23,975, seventy-five per cent of which was to be paid from time to time as the work progressed, and the balance after the expiration of thirty-three days from the fulfilment of the contract. It was further provided, that "neither party hereto is to sell, assign, transfer, or sublet this contract, except by the written agreement of the other party."

in the further completion of his contract with the city, and made a proper and legitimate use of all of said sum. At the time of filing said petition, there was due Stewart under said contract the sum of $600 or more, though not then payable.

After Gilkey was appointed assignee, he substantially completed the contract with the city, whereby under said contract there became due the sum of $3238, most of which sum has been paid to Gilkey as assignee, the city reserving, on account of this assignment, a sum sufficient to pay the same.

The city has been ready and willing to make a severance of the sum due under said contract, to pay the plaintiff the amount of said assignment and Gilkey the balance, if it can legally do so, but has been forbidden so to do by Gilkey, who, as assignee, claims the whole amount due under said contract, and has begun an action at law therefor, which is now pending in this court.

The prayer of the bill was, that the suit at law pending between Gilkey, as such assignee, and the city of Newton, might be stayed to await the determination of this suit in equity; that the city be enjoined from paying the sum of $600 to Gilkey until the further order of this court; and that said sum be decreed to be paid to the plaintiff by the city.

The answer of the city of Newton admitted having paid to Gilkey $2462.25, and that it had in its hands a balance of $776.43, and proceeded as follows:

" This defendant admits that said Gilkey has commenced a suit at law in this court for said balance, which suit is now pending, and says that said plaintiff hath claimed the amount named in said assignment and by virtue thereof, and this defendant is now and always has been ready and willing to pay said balance to such person or persons as should be justly entitled to receive the same, whether said plaintiff or said Gilkey as such assignee, and to whom this defendant could safely pay the same, but this defendant cannot pay over said sum without taking upon itself the responsibility of determining doubtful questions of law and fact, and says that it is liable and likely to be subject to great cost and expense in defending itself from said parties, each of whom claims said sum.

" This defendant prays that said suit at law may be stayed and enjoined, and that said plaintiff and said Gilkey may interplead,

and settle and adjust their demands between themselves, and that the court shall order and decree to whom said sum shall be paid, and that it may be hence dismissed, with its reasonable costs and charges in this behalf most wrongfully sustained."

The answer of Gilkey, so far as it need be stated, contained the following averments:

" This defendant further says, that, at the time of the filing of said petition in insolvency, said contract was not nearly completed, and that this defendant, principally out of his own money and credit, and partly out of the assets of said estate, advanced large sums to finish said contract, and did finish the same at an expense of more than $1000, and also paid off many mechanics' liens to which said building was subject by reason of the failure of said Stewart to pay his workmen, and that, if this defendant had not so completed said contract and paid said liens, nothing would have been due to him or any one from said city. Said liens amounted to more than $500.

" This defendant says that the assets of said Stewart's estate, including said fund in controversy, are insufficient to pay the preferred claims for labor already proved.

" This defendant submits that said assignment, under the circumstances under which it was given, was in fraud of the insolvent laws, and so void."

The following facts were agreed upon:

The plaintiff and Stewart, at the time of execution of the assignment, knew that Stewart was actually insolvent, and had called a meeting of his creditors, and that they had voted to accept twenty cents on the dollar of their claims, (that is, a majority of those present at the meeting had so voted, a small portion never acceding to the arrangement,) and Stewart represented to the plaintiff that he was obtaining this money to assist him to complete the contract and to effect the composition of twenty cents on a dollar, and assured him that he could do so.

No action or vote was ever had or taken upon said assignment by the city, by the city council or either branch thereof, by any committee, or by any person authorized to bind the city.

The assignee, Gilkey, when he was appointed, had substantially no funds of the estate of Stewart in his possession, and,

in order to complete said contract, expended about $1200 of his own funds in labor and materials in finishing the building, and paid off, out of the funds in the hands of the city eventually paid him, mechanics' liens thereon amounting to about $500 besides. It is admitted that said sum expended by him was a reasonable one, and necessary to finish the contract.

The plaintiff actually paid and lent to Stewart the sum of $575 at the time of the execution of said assignment, which was the sum agreed upon between the two, and Stewart expended the same as follows : $225 to his counsel as a retainer in insolvency and for professional services ; $210 on the schoolhouse contract, $68 of which he expended after filing his petition ; $77 for personal expenses after he went into insolvency; and the balance in personal expenses before filing his petition in insolvency, which was a voluntary one. After filing the petition, the creditors who had refused to accept the composition were seen and urged to accept, but again refused. No note or memorandum was given to the plaintiff by Stewart for said loan of $575. Stewart made no claim against the estate for an allowance for support of himself and family, consisting of four persons, but made use of said $77 for that purpose.

Hearing in the Superior Court, on the bill, answers, and agreed facts, before *Knowlton*, J., who reserved the case for the determination of this court.

*C. C. Powers*, for the plaintiff.

*W. S. Slocum*, for the city of Newton.

*W. B. Durant*, for Gilkey.

FIELD, J. The assignment in this case is a formal assignment, for value, of "the sum of six hundred dollars now due and to become due and payable to me" from the city of Newton, under and by virtue of a contract for building a grammar school-house, and it is agreed that this sum "shall be paid out of the money reserved as a guaranty by said city," and the assignee is empowered "to collect the same." There is no doubt that it would operate as an assignment to the extent of $600, if there can be an assignment, without the consent of the debtor, of a part of a debt to become due under an existing contract; and the cases that hold that an order drawn on a general or a particular fund is not an assignment *pro tanto*, unless it is accepted by the

person on whom it is drawn, need not be noticed. That a court of law could not recognize and enforce such an assignment, except against the assignor if the money came into his hands, is conceded. The assignee could not sue at law in the name of the assignor, because he is not an assignee of the whole of the debt. He could not sue at law in his own name, because the city of Newton has not promised him that it will pay him $600. The $600 is expressly made payable "out of the money reserved as a guaranty by said city;" and, by the contract, the balance reserved was payable as one entire sum ; and at law a debtor cannot be compelled to pay an entire debt in parts, either to the creditor or to an assignee of the creditor, unless he promises to do so. Courts of law originally refused to recognize any assignments of choses in action made without the assent of the debtor, but for a long time they have recognized and enforced assignments of the whole of a debt, by permitting the assignee to sue in the name of the assignor, under an implied power, which they hold to be irrevocable. Partial assignments such courts have never recognized, because they hold that an entire debt cannot be divided into parts by the creditor without the consent of the debtor. It is not wholly a question of procedure, although the common law procedure is not adapted to determining the rights of different claimants to parts of a fund or debt. The rule has been established, partially at least, on the ground of the entirety of the contract, because it is held that a creditor cannot sue his debtor for a part of an entire debt, and, if he brings such an action and recovers judgment, the judgment is a bar to an action to recover the remaining part. There must be distinct promises in order to maintain more than one action. *Warren* v. *Comings*, 6 Cush. 103.

It is said that, in equity, there may be, without the consent of the debtor, an assignment of a part of an entire debt. It is conceded that, as between assignor and assignee, there may be such an assignment. The law that, if the debtor assents to the assignment in such a manner as to imply a promise to the assignee to pay to him the sum assigned, then the assignee can maintain an action, rests upon the theory that the assignment has transferred the property in the sum assigned to the assignee as the consideration of the debtor's promise to pay the assignee,

and that by this promise the indebtedness to the assignor is *pro tanto* discharged. It has been held, by courts of equity which have hesitated to enforce partial assignments against the debtor, that if he brings a bill of interpleader against all the persons claiming the debt or fund, or parts of it, the rights of the defendants will be determined and enforced, because the debtor, although he has not expressly promised to pay the assignees, yet asks that the fund be distributed or the debt paid to the different defendants according to their rights as between themselves; and the rule against partial assignments was established for the benefit of the debtor. *Public Schools* v. *Heath*, 2 McCarter, 22. *Fourth National Bank* v. *Noonan*, 14 Mo. App. 243.

In many jurisdictions, courts of equity have gone farther, and have held that an assignment of a part of a fund or debt may be enforced in equity by a bill brought by the assignee against the debtor and assignor while the debt remains unpaid. The procedure in equity is adapted to determining and enforcing all the rights of the parties, and the debtor can pay the fund or debt into court, have his costs if he is entitled to them, and thus be compensated for any expense or trouble to which he may have been put by the assignment. But some courts of equity have gone still farther, and have held that, after notice of a partial assignment of a debt, the debtor cannot rightfully pay the sum assigned to his creditor, and, if he does, that this is no defence to a bill by the assignee. The doctrine carried to this extent effects a substantial change in the law. Under the old rule, the debtor could with safety settle with his creditor and pay him, unless he had notice or knowledge of an assignment of the whole of the debt; under this rule, he cannot, if he have notice or knowledge of an assignment of any part of it.

It may be argued that, if a bill in equity can be maintained against the debtor by an assignee of a part of the debt, it must be on the ground, not only that the plaintiff has a right of property in the sum assigned, but also that it is the debtor's duty to pay the sum assigned to the assignee; and that, if this is so, it follows that, after notice of the assignment, the debtor cannot rightfully pay the sum assigned to the assignor.

The facts of this case, however, do not require us to decide whether a bill can be maintained after the debtor has paid the entire debt to his creditor, although after notice of a partial assignment. The city of Newton, in its answer, says that it "is willing to pay said balance to such person or persons as should be justly entitled to receive the same, whether said plaintiff, or said Gilkey as such assignee;" and prays "that said plaintiff and said Gilkey may interplead, and settle and adjust their demands between themselves, and that the court shall order and decree to whom said sum shall be paid." This is in effect asking the aid of the court in much the same manner as if the city of Newton had brought a bill of interpleader; and the proceedings are not open to the objection that the court is compelling the city of Newton to assent to an assignment against its will.

This is the first bill in equity to enforce a partial assignment of a debt which has been before this court. It has been often declared here, that there cannot be an assignment of a part of an entire debt without the assent of the debtor; but the cases are all actions at law, and in the majority of them the statement was not necessary to the decision.

In *Tripp* v. *Brownell*, 12 Cush. 376, 381, the action was assumpsit, to recover the amount of the plaintiff's lay as a mariner on a whaling voyage. The defence was an assignment of the balance due, made by the plaintiff and accepted by the defendant. This was held a good defence, the court saying: "It is in terms an assignment of the whole lay; it must be so by operation of law. It is not competent for a creditor to assign part of the debt, so as to give any equitable interest in part of the debt, or create any lien upon it. The debtor, or holder of the assignable interest, cannot, without his own consent, be held legally or equitably liable to an assignee for part, and to the original creditor, or another assignee for another part. *Mandeville* v. *Welch*, 5 Wheat. 277. *Gibson* v. *Cooke*, 20 Pick. 15. *Robbins* v. *Bacon*, 3 Greenl. 346."

*Gibson* v. *Cooke, ubi supra,* was assumpsit, brought in the name of Gorham Gibson for the benefit of one Plympton, to whom Gibson had given an order on the defendant to pay Plympton $175.33 "as my income becomes due." The defendant

held property in trust to pay over the "net proceeds once a quarter" to Gibson and others. The court held, that it did not appear that, "at the time of the assignment, or at any period since, the whole amount due to Gorham Gibson would correspond with the amount of the draft," and that "a debtor is not to have his responsibilities so far varied from the terms of his original contract as to subject him to distinct demands on the part of several persons, when his contract was one and entire."

*Knowlton* v. *Cooley*, 102 Mass. 233, was a trustee process, and the trustee had in his hands $147 due the defendant as wages, and the claimant held an order, given by the defendant before the wages were earned, for the payment to him of the defendant's wages, "as fast as they became due, to the amount of $150," which the trustee had accepted. The court held that the order was an assignment of wages, and, not having been recorded, was invalid against a trustee process by the St. of 1865, *c.* 43, § 2. The court say: "The acceptance of the order by Barton [the trustee] does not change its character. His assent was necessary to give it any validity even as an assignment. *Gibson* v. *Cooke*, 20 Pick. 15."

*Papineau* v. *Naumkeag Steam Cotton Co.* 126 Mass. 372, was an action of contract, and the court say: "The order of Couillard on the defendant, in favor of the plaintiff, was not an order for payment of all that should be due the drawer as wages at the several times when the instalments were to be paid. It was not, therefore, an assignment of wages to the plaintiff, unless the defendant saw fit to assent to it as such, but a mere order for money."

It is settled that an assignment of a part of a debt, if assented to by the debtor in such a manner as to imply a promise to pay it to the assignee, is good against a trustee process, or against an assignee in insolvency. *Taylor* v. *Lynch*, 5 Gray, 49. *Lannan* v. *Smith*, 7 Gray, 150. In *Bourne* v. *Cabot*, 3 Met. 305, the court say, "The order of Litchfield on the defendant was a good assignment of the fund, *pro tanto*, to the plaintiff, and the express promise to the assignee, to pay him the balance when the vessel should be sold, constituted a legal contract."

It is also settled, that an equitable assignment of the whole fund in the hands of the trustee is good against a trustee process,

although the trustee has received no notice of the assignment until after the trustee process is served, and has never assented to it. *Wakefield* v. *Martin*, 3 Mass. 558. *Kingman* v. *Perkins*, 105 Mass. 111. *Norton* v. *Piscataqua Ins. Co.* 111 Mass. 532. *Taft* v. *Bowker*, 132 Mass. 277. *Williams* v. *Ingersoll*, 89 N. Y. 508.

Before, as well as since, the St. of 1865, *c.* 43, § 1, (Pub. Sts. *c.* 183, § 38,) if the assignment was for collateral security, and the assignee was bound to pay immediately to the assignor, out of the sum assigned, any balance remaining after payment of his debt, it has been held that the excess above the debt for which the assignment is security is attachable by the trustee process. *Macomber* v. *Doane*, 2 Allen, 541. *Darling* v. *Andrews*, 9 Allen, 106. *Warren* v. *Sullivan*, 123 Mass. 283. *Giles* v. *Ash*, 123 Mass. 353. See *Lannan* v. *Smith, ubi supra.*

In *Macomber* v. *Doane, ubi supra*, the court say: "An order constitutes a good form of assignment, it being for the whole sum due or becoming due to the drawer, and it needs not be accepted to make it an assignment." The order was for one month's wages, which, as subsequently ascertained, amounted to $37.50, but it was given as security for groceries furnished and to be furnished, and, on the day of the service of the writ, the defendant owed the claimant for groceries $28.79, and the remaining $8.71 was held by the trustee process.

Some of these cases were noticed in *Whitney* v. *Eliot National Bank*, 137 Mass. 351, and the court then declined to decide "whether in equity there may not be an assignment of a part of a debt."

Without considering the cases upon the effect of orders or drafts for money, as constituting assignments of the debt or of a part of it, it seems never to have been decided in this Commonwealth that an assignment for value of a part of an entire debt is not good, to the extent of the assignment, against trustee process. In trustee process, the trustee of the defendant, if charged, is by the statute compelled to pay to the plaintiff so much of what he admits to be due to the defendant as is necessary to satisfy the plaintiff's judgment; and, as an entire debt may thus be divided, it seems equitable that an assignee of a part of the debt should be admitted as a claimant,

and this is in effect done when the assignment is as collateral security.

*Palmer* v. *Merrill*, 6 Cush. 282, was assumpsit against the administrator of Spaulding, who had caused his life to be insured, by a policy payable to himself, his executors, administrators, or assigns; and he, by a memorandum in writing indorsed on the policy, for a valuable consideration, assigned and requested the insurer to pay the plaintiff the sum of $400, part of the sum insured by the policy, in case of loss on the same, of which assignment and request the insurers on the same day had due notice. The policy, with this indorsement thereon, remained in the custody of Spaulding until his decease, and came into the hands of the administrator of his estate, who collected the whole amount of the insurance, and represented the estate as insolvent; and the question was "whether the case shows an assignment, which vested any interest in this policy, legal or equitable, in the plaintiff."

The court held that it did not, and said: "According to the modern decisions, courts of law recognize the assignment of a chose in action, so far as to vest an equitable interest in the assignee, and authorize him to bring an action in the name of the assignor, and recover a judgment for his own benefit. But, in order to constitute such an assignment, two things must concur : first, the party holding the chose in action must, by some significant act, express his intention that the assignee shall have the debt or right in question, and, according to the nature and circumstances of the case, deliver to the assignee, or to some person for his use, the security, if there be one, bond, deed, note, or written agreement, upon which the debt or chose in action arises; and, secondly, the transfer shall be of the whole and entire debt or obligation, in which the chose in action consists. . . . . It appears to us, that the order indorsed on this policy, and retained by the assured, fails of amounting to an assignment, in both of these particulars." The court further said, that, if an order be "for a part only of the fund or debt, it is a draft or bill of exchange, which does not bind the drawee, or transfer any proprietary or equitable interest in the fund, until accepted by the drawee. It therefore creates no lien upon the fund. Upon this point, the authorities seem decisive. *Welch* v. *Mandeville*,

1 Wheat. 233; *S. C.* 5 Ib. 277. *Robbins* v. *Bacon,* 3 Greenl. 346. *Gibson* v. *Cooke,* 20 Pick. 15."

*Welch* v. *Mandeville, ubi supra,* was an action of covenant broken, brought by Prior in the name of Welch against Mandeville, who set up a release by Welch, to which Prior replied that Welch, before the release, had assigned the debt due by reason of the covenant to him, of which the defendant had notice. The court consider the effect of certain bills of exchange, and say: "But where the order is drawn either on a general, or a particular fund, for a part only, it does not amount to an assignment of that part, or give a lien as against the drawee, unless he consent to the appropriation by an acceptance of the draft;" that "a creditor shall not be permitted to split up a single cause of action into many actions, without the assent of his debtor;" and that, "if the plaintiff could show a partial assignment to the extent of the bills, it would not avail him in support of the present suit."

The equitable doctrine now maintained by the Supreme Court of the United States is shown by *Wright* v. *Ellison,* 1 Wall. 16; *Christmas* v. *Russell,* 14 Wall. 69; *Trist* v. *Child,* 21 Wall. 441; and *Peugh* v. *Porter,* 112 U. S. 737. In *Peugh* v. *Porter,* that court ordered that a decree be entered that Peugh, subject to certain rights in the estate of Winder, was entitled to one fourth of a fund, by virtue of an assignment of one fourth of a claim against Mexico, made before the establishment of the claim from which the fund was derived, and before the fund was in existence; and declared the law to be, that " it is indispensable to a lien thus created that there should be a distinct appropriation of the fund by the debtor, and an agreement that the creditor should be paid out of it." In *Robbins* v. *Bacon, ubi supra,* the order was for the payment of the whole of a particular fund, and was held good.

The existing law of Maine is declared in *National Exchange Bank* v. *McLoon,* 73 Maine, 498, by an elaborate opinion, and the conclusion reached is, that an assignment of a part of a chose in action is good in equity, and against a trustee process.

In England, it is held that the particular fund or debt out of which the payment is to be made must be specified in the assignment; *Percival* v. *Dunn,* 29 Ch. D. 128; but the assignment of

a part of a debt or fund is good in equity. The present case is like *Ex parte Moss*, 14 Q. B. D. 310, and a stronger case for the plaintiff than *Brice* v. *Bannister*, 3 Q. B. D. 569, where, although the procedure was under the St. of 36 & 37 Vict. *c.* 66, the foundation of the liability was that the assignment was good in equity; and the case at bar is relieved from the difficulties which induced Brett, L. J., in that case, to dissent; and *Brice* v. *Bannister* was approved in *Ex parte Hall*, 10 Ch. D. 615. The present case also resembles *Tooth* v. *Hallett*, L. R. 4 Ch. 242, except that there the sums paid by the trustee for creditors in finishing the house exhausted all that became due under the contract. See also *Addison* v. *Cox*, L. R. 8 Ch. 76.

In *Appeals of Philadelphia*, 86 Penn. St. 179, it is conceded that the rule that an assignment of a part of a debt is valid prevails in equity between individuals; but the court refused to apply it to a debt due from a municipal corporation, on the ground that " the policy of the law is against permitting individuals, by their private contracts, to embarrass the principal officers of a municipality." See *Geist's appeal*, 104 Penn. St. 351. But there is no ground for any such distinction in this Commonwealth.

In New York, the assignment of a part of a debt or fund is good in equity. *Field* v. *Mayor*, 2 Seld. 179. *Risley* v. *Phenix Bank*, 83 N. Y. 318. And the same doctrine is maintained in other States. *Daniels* v. *Meinhard*, 53 Ga. 359. *Etheridge* v. *Vernoy*, 74 N. C. 809. *Lapping* v. *Duffy*, 47 Ind. 51. *Fordyce* v. *Nelson*, 91 Ind. 447. *Bower* v. *Hadden Blue Stone Co.* 3 Stew. (N. J.) 171. *Gardner,* v. *Smith*, 5 Heisk. 256. *Grain* v. *Aldrich*, 38 Cal. 514. *Des Moines* v. *Hinkley*, 62 Iowa, 637. *Canty* v. *Latterner*, 31 Minn. 239. *First National Bank* v. *Kimberlands*, 16 W. Va. 555.

From the examination of our cases, it appears not to have been decided that there cannot be an assignment of a part of a fund or debt which will constitute an equitable lien or charge upon it, and be enforced in equity against the debtor or person holding the fund. *Palmer* v. *Merrill, ubi supra*, may well rest upon the first reason given for the decision. See *Stearns* v. *Quincy Ins. Co.* 124 Mass. 61–63. The decisions of courts of equity in other jurisdictions are almost unanimous in maintaining such a lien,

where the assignment is for value, distinctly appropriates a part of the fund or debt, and makes the sum assigned specifically payable out of it.

Without undertaking to decide what is not before us, and confining ourselves to the facts in the case, which are that the debt is admitted and remains unpaid, and the debtor in his answer asks the court to determine the rights of the different claimants, we think that there should be a decree that the city of Newton pay to the plaintiff $600 ; and that the remainder of the sum due from the city, after deducting its costs, be paid to Gilkey, assignee.

The assignment was not made in fraud of the laws relating to insolvency.                                        *So ordered.*