### BENJAMIN F. HOLBROOK *vs.* HENRY B. PAYNE.

Middlesex.    March 6, 1890. — May 8, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Trustee Process — Order — Assignment — Acceptance.*

Orders were drawn upon a town by one who had furnished to it labor and materials under a building contract, aggregating less than the amount due him on the contract, requesting it to "charge the same to account of" or "to the account of" the drawer, and were left by the drawee with the selectmen, and were merely retained by them. *Held*, that the orders did not operate as an assignment in law or equity of any part of the debt, such as would prevail against trustee process; and that such retention by the selectmen did not amount to an acceptance by the town.

TRUSTEE PROCESS. Writ dated July 13, 1888. A special precept of attachment was issued on December 10, 1888, and the answer of the town of Winchester, summoned as trustee of the defendant, who was defaulted, disclosed funds in its hands amounting to one hundred and eighty-one dollars and forty cents. Alexis Cutting appeared as claimant of the funds in the hands of the trustee.

The case was submitted to the Superior Court, and, after judgment for the claimant, to this court on appeal, on agreed facts, in substance as follows.

The defendant entered into a contract with the town of Winchester to do certain work upon its town hall, and to furnish the materials therefor. On July 19, 1888, upon the completion of the work, he rendered a bill for the same, which was duly approved on that day by the building committee, for two hundred and seventeen dollars and twenty-seven cents. On

July 12, 1888, he gave the following order to the claimant: "Winchester, July 12th, '88. Town of Winchester. Pay to the order of A. Cutting ninety and thirty-two hundredths dollars, value received, and charge the same to account of H. B. Payne." At about the same time, he gave four other orders to different persons, for sums in all amounting to sixty-five dollars and twenty-seven cents, and varying from the above order to the claimant only in the amounts, and in directing the town to "charge the same to the account of H. B. Payne." These orders were left by the claimant and such other persons with the selectmen of the town on July 19, 1888, and were never recorded nor accepted by the town, unless their remaining thenceforth in the hands of the selectmen constituted such an acceptance. The decision as to the claimant's order was to apply to the four other orders.

*T. E. Grover & F. Joy*, for the plaintiff.

*A. S. Hall*, for the claimant.

HOLMES, J. The defendant in this action has been defaulted, and the question before us is whether the plaintiff or the claimant Cutting is entitled to a certain part of the debt due from the trustee to the defendant.

There is no doubt that an order for a specific fund, identified by the order itself, may be a good assignment. *Kingman* v. *Perkins*, 105 Mass. 111. We assume in favor of the claimant that an equitable assignment to him of a part of the debt would be good as between him and the plaintiff upon trustee process. *Dana* v. *Third National Bank*, 13 Allen, 445, 447. *James* v. *Newton*, 142 Mass. 366, 374. Our difficulty is to discover any ground for saying that the instrument relied upon constituted such an assignment.

On its face, the order given to the claimant by the defendant does not refer to a particular fund or debt, but is an ordinary negotiable draft, or unaccepted bill of exchange, drawn upon the town on the general credit of the drawer. An indorsement of the instrument by the claimant would have given the indorsee a right of action in his own name against the drawer, if the draft should be dishonored. But the fact that the order is a negotiable instrument on its face shows that it is not drawn against a particular fund. If it were drawn against a particular

fund, it would not be negotiable. *Wheeler* v. *Souther*, 4 Cush. 606, 607. *Harriman* v. *Sanborn*, 43 N. H. 128.

The case is stronger for holding a check upon a bank to be an assignment, than it is for holding an ordinary draft to be so. A check is supposed to be drawn against a fund deposited, for which, to be sure, the bank is no more than a debtor; but a debtor on the implied term that the creditor has a right to split up the debt at will, and to require part payments in such amounts, at such times, and to such persons as he chooses. In general, the creditor has no right to draw above the amount of his deposit, and would be guilty of a fraud if he obtained money or goods for a check knowingly so drawn. Yet the weight of authority is that a check is not an assignment either at law or in equity. *Bullard* v. *Randall*, 1 Gray, 605. *Dana* v. *Third National Bank*, 13 Allen, 445, 447. *Attorney General* v. *Continental Life Ins. Co.* 71 N. Y. 325. *First National Bank of Mount Joy* v. *Gish*, 72 Penn. St. 13. *Hopkinson* v. *Forster*, L. R. 19 Eq. 74. *Schroeder* v. *Central Bank of London*, 24 W. R. 710. See *Laclede Bank* v. *Schuler*, 120 U. S. 511, 514.

*A fortiori*, the same rule must hold good of an ordinary draft unaccepted, which does not import the existence of a debt from the drawee to the drawer, but leaves the mode of the drawee's reimbursement to such private arrangements as may exist between the drawer and himself. And so are the decisions: *Whitney* v. *Eliot National Bank*, 137 Mass. 351, 355, 356; *National Exchange Bank* v. *McLoon*, 73 Maine, 498, 511; *Bank of Commerce* v. *Bogy*, 44 Misso. 13. See *First National Bank of Canton* v. *Dubuque Southwestern Railway*, 52 Iowa, 378.

There is no extrinsic fact in the present case which gives the document a different effect from that which results from its tenor, if it be possible that its effect should be varied by parol. See *Whitney* v. *Eliot National Bank*, 137 Mass. 351, 355; *Griffin* v. *Weatherby*, L. R. 3 Q. B. 753, 759; *First National Bank of Canton* v. *Dubuque Southwestern Railway*, 52 Iowa, 378. The defendant had done work for the town, and his only right to draw was in respect of the price of his work. If we assume this fact to have been known to all parties concerned, still it only shows that the town was known to have means of indemnifying itself if it saw fit to pay. It does not enlarge the

meaning of the draft beyond that which it bears on its face, of a general request to the town to pay. Even a reference to a fund out of which a drawee may indemnify himself will not take away the negotiable character of the draft. We may remark that the concluding words of the draft in question are " charge to account of." In some of the others, they are " charge to the account of," which . is slightly more specific. But we do not see any sound distinction in favor of the latter. If the town had accepted the order, having power to do so, it would have become liable on a direct and absolute contract to the claimant, very likely having a right to withhold an equal amount of its debt to the defendant. But mere retention of the draft was not acceptance. *Overman* v. *Hoboken City Bank*, 2 Vroom, 563.

*Trustee charged. Judgment for plaintiff.*