ALBERT W. LARRABEE, Administrator, *vs.* JAMES A. HASCALL.

Androscoggin.　Opinion February 25, 1896.

| 88 | 511 |
| 98 | 45 |

| 88 | 511 |
| 106 | 433 |

*Gift.　Trust.　Savings Bank Deposit.　Assignment.*

The defendant nursed and cared for the deceased for three months prior to his death, and about six weeks before his death the deceased drew his order and delivered it, together with the bank book, to the defendant, saying: "Take this, Jim, when I am gone draw the money, put a monument over my brother Stillman's grave, pay my funeral expenses, and the rest is yours." The order was as follows:

"West Durham, April 25, 1894.

"To the Treasurer of the Auburn Savings Bank:

"Pay to James A. Hascall two hundred dollars, and charge the same to deposit book No. 11875.

John P. Larrabee."

"Witness, Charles H. Hascall."

The amount of deposit as represented by the bank book was $486.26. The defendant took the order and book and retained them in his possession till after the decease of the said Larrabee. Two days after his decease defendant presented the order and book to the bank and drew the amount of the order, and afterwards surrendered the book with the remainder of the deposit therein to the administrator.

*Held;* that the defendant having executed the trust with which he was charged, could not be held to pay back the money drawn on the order to the administrator of deceased.

*Held;* further, that the order accompanied by delivery of the bank book constituted a valid transfer of the amount represented by the order, notwithstanding it was not for the full amount of the deposit.

It was for a specific sum, and was certainly an equitable assignment thereof.

There was accompanying the delivery of the order and bank book a declaration of trust.

This delivery of the evidence and means of reducing the gift to possession, was sufficient, so far as the element of delivery was concerned, to pass the title as a gift causa mortis.

Such delivery accompanied by the declaration of trust was an unmistakable manifestation of the intention of the donor of making a final disposition of the two hundred dollars represented by the order and bank book, and was a valid gift causa mortis.

The fact that a gift is made upon terms and qualifications annexed to it as prescribed by the donor, will not defeat it, or affect its validity as a gift causa mortis.

In order to constitute a gift causa mortis, it is not necessary that the gift should be made in extremis, and when there is no time or opportunity to

make a will; it is sufficient to render the gift effectual if, before the donor's recovery from the disease from which he apprehended death, he should die from some other disease existing at the same time; that it should be made under apprehension of death from some present disease, or impending peril, but there is no specific limit of time within which the donor must die to make such a gift valid.

AGREED STATEMENT.

This was an action in which the plaintiff, as administrator of John P. Larrabee, deceased, declared on the money counts, and claimed to recover of the defendant the sum of two hundred dollars, with interest thereon, for money of the estate of the said John P. Larrabee, deceased, drawn by said defendant from the Auburn Savings Bank after the death of said John P. Larrabee, to wit, on the thirteenth day of June, A. D., 1892, without right or authority, and by him wrongfully detained and withheld from the plaintiff in his said capacity.

Plea, general issue.

The parties agreed to the following statement of facts :

"It is agreed that John P. Larrabee died on June 11, 1892, aged seventy-two years. That he lived alone, and was sick for some six months prior to his decease, from the sickness of which he died; that at the time of signing the order he was confined to his house, but not to his bed. That the defendant, James A. Hascall, nursed and cared for him during about three months prior to his death. That on the twenty-fifth day of April, 1892, the said Larrabee gave the said Hascall an order, of which the following is a copy.

"West Durham, April 25, 1892.

"To the Treasurer of the Auburn Savings Bank :

"Pay to James A. Hascall two hundred dollars, and charge the same to Deposit Book No. 11875.

John P. Larrabee."

"Witness, Charles H. Hascall.

"That John P. Larrabee then had a savings bank book, on the Auburn Savings Bank, numbered 11875, upon which at the time of the decease of John P. Larrabee there was due $486.26 ; that after signing this order, the said Larrabee delivered the order and savings bank book to the said Hascall, then saying

to him : "Take this Jim," (meaning the defendant,) "when I am gone draw the money, put a monument over my brother Stillman's grave," (meaning Stillman Larrabee,) "pay my funeral expenses and the rest is yours."

"The defendant Hascall took the order and savings bank book and retained them in his possession until after the decease of the said Larrabee. Two days after the decease of Larrabee, on June 13, 1892, the said Hascall presented the savings bank book and order to the Auburn Savings Bank and drew two hundred dollars and surrendered the order to the bank, the bank officials not then knowing of Larrabee's death. He afterwards surrendered the bank book, with the remainder of the deposit thereon, to the administrator, who demanded that said sum of two hundred dollars should be paid to him by Hascall.

"Subsequently Hascall paid out of the two hundred dollars the following sums, without any authority from the administrator.

| | |
|---|---:|
| June 13, 1892, for casket and robe, | $29 00 |
| Expenses for singing, clergyman at funeral, digging and filling grave, | 9 00 |
| November 16, 1893, for grading lot of Stillman Larrabee, | 5 00 |
| November 10, 1893, for monument, verse and lettering for the said Stillman Larrabee, | 145 00 |
| | $188 00 |

"After the death of John P. Larrabee, James A. Hascall presented the following account against the estate, which was referred to commissioners, who allowed $78.61, expressly excluding any consideration of the present claim of two hundred dollars by the administrator against said Hascall, as not being within their jurisdiction to determine.

"Durham, Me., May 15, 1893.

| | |
|---|---:|
| To nursing, care and attendance of the deceased in his last sickness, from and including March 10, 1892, to and including May 20, 1892, during each day, at $1 per day, | $72.00 |

To nursing, care and attendance of the deceased in his
    last sickness, from and including May 21, 1892,
    to June 11, 1892, during each day and night, at
    $2 per day and night,                .       42.00
To labor furnished on the farm, of the deceased, located
    at West Durham, for the year 1892,        6.00

        Total,                         $120.00
        Credit by hay to E. W. Libby,      4.50

                              $115.50 "

Upon so much of the foregoing statement as might be admissible and material, the law court was to render such judgment as the law and the facts require.

*A. R. Savage and H. W. Oakes*, for plaintiff.

Counsel argued that this was a futile gift inter vivos.

As a trust, the objects are not specifically distinct or proper in their nature, and wanting in a completed delivery; and that under the express terms of agreement between Larrabee and Hascall, it was not intended to give Hascall the right to the possession or the control of the money until after Larrabee's death, thus being an incomplete gift, and therefore invalid.

Gift causa mortis: Burden on claimant to show that all necessary conditions existed. *Parcher* v. *Saco*, 78 Maine, 470.

Donor must be in last illness and in apprehension of approaching death. Thornton on Gifts and Advancements, §§ 21 and 28; *Parcher* v. *Saco*, supra; *Emery* v. *Clough*, 63 N. H. 552; *Basket* v. *Hassell*, 107 U. S. 602; *Dresser* v. *Dresser*, 46 Maine, 48. Gift must be intended as revocable by donor. Woerner, American Law of Administration. *Basket* v. *Hassell*, supra.

Gift inter vivos: Must be good to pass title to all the property in question or fails entirely. *McGrath* v. *Reynolds*, 116 Mass. 566; *Curry* v. *Powers*, 70 N. Y. 212; *Irish* v. *Nutting*, 47 Barb. 370.

Donor must part with all present and future dominion and control over the property, and gift must take effect at once.

Thornton on Gifts and Advancements, § 76; *Carleton* v. *Love-joy,* 54 Maine, 445; *Northrop* v. *Hale,* 73 Maine, 66; *Dole* v. *Lincoln,* 31 Maine, 422; *Reed* v. *Spaulding,* 42 N. H. 114; *Allen* v. *Polereczky,* 31 Maine, 338; *Frost* v. *Frost,* 33 Vt. 639; *Basket* v. *Hassell,* supra; *Curry* v. *Powers,* 70 N. Y. 212; *Craig* v. *Kittredge,* 46 N. H. 57; *Gerry* v. *Howe,* 130 Mass. 350; *Carr* v. *Silloway,* 111 Mass. 24; Woerner, American Law of Administration, p. 119; *Waynesburg College Appeal,* 111 Pa. St. 130 (S. C. 56 Am. Rep. 252 and note). Incomplete gift cannot be construed as a trust. Thornton on Gifts and Advancements, §§ 410, 415, 416. *Gerry* v. *Howe,* 130 Mass. 354.

Check revoked by death of donor. *Curry* v. *Powers,* 70 N. Y. 212; *Basket* v. *Hassell,* supra; *Simmons* v. *Cincinnati,* 31 Ohio St. 457 (S. C. 27 Am. Rep. 521).

*W. H. Newell* and *W. B. Skelton,* for defendant.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WIS-WELL, STROUT, JJ.

FOSTER, J. The plaintiff as administrator of John P. Larrabee, deceased, brings this suit to recover of the defendant the sum of two hundred dollars which he claims to belong to the estate of the deceased, drawn by the defendant from the Auburn Savings Bank, two days after the decease of the intestate, upon the following order:

"West Durham, April 25, 1892.

"To the Treasurer of the Auburn Savings Bank:

"Pay to James A. Hascall two hundred dollars, and charge the same to Deposit Book No. 11875.

John P. Larrabee."

"Witness, Charles H. Hascall."

The case shows that deceased was seventy-two years old, lived alone, and had been sick for about six months prior to his decease, and from this sickness he died. It appears that the defendant nursed and cared for him for about three months

prior to his death, which occurred June 11, 1892. When the order was drawn, and at the time of his death, the deceased had a deposit in the Auburn Savings Bank for $486.26. At the time the order was drawn and signed, the deceased delivered it together with the savings bank book to the defendant, saying to him : "Take this, Jim, when I am gone draw the money, put a monument over my brother Stillman's grave, pay my funeral expenses, and the rest is yours."

The defendant took the order and book, and retained them in his possession till after the decease of said Larrabee. Two days after his decease the defendant presented the order and book to the bank and drew the two hundred dollars, and afterwards surrendered the bank book, with the remainder of the deposit therein, to the administrator, who demanded that he should pay over the two hundred dollars to him.

Subsequently the defendant paid out from the sum, thus drawn upon the order, all but twelve dollars for the funeral expenses of the deceased and for the monument of his brother Stillman, in accordance with the request of said deceased at the time the order and bank book were delivered to him.

We do not think, from the facts as they appear, that the plaintiff is entitled to recover.

Had the order been for the full amount represented by the savings bank book, there could be no question but that such an order, accompanied by the bank book, would constitute a valid transfer of the funds, without further notice, or even an acceptance of the order by the bank. *Kingman* v. *Perkins*, 105 Mass. 111 ; *Kimball* v. *Leland*, 110 Mass. 325 ; *Foss* v. *Savings Bank*, 111 Mass. 285.

In *Kimball* v. *Leland*, supra, a depositor delivered an order for the payment of the deposit, and also the bank book, to a person for the purpose of transferring the money represented by the order and book. The order and bank book were not presented to the bank till after the death of the donor, and it was held that such order and delivery of the bank book constituted a complete transfer as against the next of kin of the donor, notwithstanding the money was not drawn during the life of the

donor.   Nor is there any doubt that an order for a specific fund, which is identified by the order itself, would constitute a valid assignment of that fund, as was held in *Kingman* v. *Perkins,* supra; *Holbrook* v. *Payne,* 151 Mass. 383, 384.   And so would an order for a part only of an entire debt, or demand, constitute an equitable assignment to a party so as to be good as between him and the debtor upon trustee process in cases where just and equitable results may be accomplished thereby. *Exchange Bank* v. *McLoon,* 73 Maine, 498; *Roberts* v. *Noyes,* 76 Maine, 590, 593; *Horne* v. *Stevens,* 79 Maine, 262; *Dana* v. *Third National Bank,* 13 Allen, 445, 447; *James* v. *Newton,* 142 Mass. 366, 374.

In the case at bar, the order, it is true, was not for the full amount of the deposit represented by the bank book, but notwithstanding that fact the intention of the deceased is clearly manifest, and that was to transfer a specific and definite sum.   With the delivery of that order and the bank book to the defendant, we are unable to perceive any valid reason why the deceased did not thereby transfer his title to that specific sum as effectually as though it had been for the entire amount of the deposit. *Brill* v. *Tuttle,* 81 N. Y. 454.   Such was undoubtedly his intention, manifested by the language of the order itself and the attendant circumstances.   It was certainly an equitable assignment, and it is held both in England and this country, that any delivery of property which transfers to the donee either the legal or equitable title, is sufficient to effectuate a gift. *Ridden* v. *Thrall,* 125 N. Y. 572, 577, and cases there cited; *Basket* v. *Hassell,* 107 U. S. 602, 610.   In *Brill* v. *Tuttle,* supra, the New York decisions are reviewed, and it is there held that if the language is ambiguous, and the order not negotiable "the attendant circumstances may be shown to determine the intention and understanding of the parties."   There is a distinction to be noticed between those instruments which are in form negotiable, and on their face show that they were drawn upon a particular fund, and those that are not negotiable. *Holbrook* v. *Payne,* supra; *Whitney* v. *Eliot National Bank,* 137 Mass. 351, 355.

In this case the order was not negotiable. It was signed by the deceased, and the same, together with the bank book, was delivered to the defendant in the presence of the person who witnessed it. At the same time there was a declaration of trust, that the defendant was to take the same, and when the deceased was gone, to draw the money, put a monument over his brother's grave, pay his funeral expenses, and the rest to keep for himself. This was a gift coupled with a trust, which the defendant has executed.

This delivery of the evidence and means of reducing the gift to possession, was sufficient, so far as the element of delivery was concerned, to pass the title as a gift causa mortis. There was actual delivery so far as the nature of the property would admit of. *Hatch* v. *Atkinson*, 56 Maine, 324; *Hill* v. *Stevenson*, 63 Maine, 364; *Curtis* v. *Portland Savings Bank*, 77 Maine, 151, 153; *Barker* v. *Frye*, 75 Maine, 29, 33; *Drew* v. *Hagerty*, 81 Maine, 231; *Pierce* v. *Five Cents Savings Bank*, 129 Mass. 425.

In *Borneman* v. *Sidlinger*, 15 Maine, 429, it was held that a negotiable promissory note payable to order, may be the proper subject of a gift causa mortis without indorsement; that the equitable interest passes to the donee, and that if there is a mortgage given as collateral security, it would be held in trust for his benefit, and may be enforced in the name of the representative of the donor, as the note may be, also, if necessary. The same doctrine is established in several Massachusetts cases, among which are. *Bates* v. *Kempton*, 7 Gray, 382, and *Pierce* v. *Boston Five Cents Sav. Bank*, 129 Mass. 425, 433.

So delivery of a bank book, without an assignment even, passes an equitable title to the fund which it represents. *Grover* v. *Grover*, 24 Pick. 261; *Parish* v. *Stone*, 14 Pick. 198; *Basket* v. *Hassell*, 107 U. S. 602, 611.

Applying to this case the strictest rules laid down in the decided cases as necessary to constitute a valid gift causa mortis, and it will stand the test. This delivery accompanied by the declaration of trust was the unmistakable manifestation of the intention of the donor of making a final disposition of the two hundred dollars represented by the order and bank book,

and was a valid gift causa mortis. The defendant held the same in trust upon the terms expressly prescribed by the donor at the time the gift was perfected by delivery to him. *Clough* v. *Clough*, 117 Mass. 83 ; *Sheedy* v. *Roach*, 124 Mass. 472.

Nor does the fact that the defendant as donee took the gift upon the terms and qualifications annexed to it, as prescribed by the donor, defeat it, or affect its validity as a gift causa mortis. *Dresser* v. *Dresser*, 46 Maine, 48 ; *Borneman* v. *Sidlinger*, 15 Maine, 429 ; *Same* v. *Same*, 21 Maine, 185 ; *Curtis* v. *Portland Savings Bank*, 77 Maine, 151, 153 : *Clough* v. *Clough*, 117 Mass. 83 ; *Hills* v. *Hills*, 8 Mees. & Wels. 401.

In the case of *Curtis* v. *Portland Savings Bank*, supra, there was a delivery of the bank book, and accompanying the gift was this language by the donor : "Now keep this, and if anything happens to me, bury me decently, and put a headstone over me, and anything that is left is yours." The court there held that the gift was valid as causa mortis, and that it was coupled with the trust that the donee should provide for the funeral expenses of the donor, and see that a headstone was furnished in accordance with the declaration of trust.

A gift of this nature cannot avail against creditors, and the donee would take it subject to the right of the administrator to reclaim it if necessary for the payment of debts of the deceased. *Mitchell* v. *Pease*, 7 Cush. 350. But there being no creditors whose rights could be affected by it, the transaction was one where the administrator stands in no better position than would the deceased himself, and is equally effectual whether with or without consideration.

It is true that the donor did not die for a month and a half after the gift was made, yet at the time it was made he was suffering from the sickness from which he died. He was under the apprehension of death, and was then so sick that he required a nurse, and this sickness continued to increase until it terminated in death.

In *Ridden* v. *Thrall*, 125 N. Y. 572, in an action to determine the title to certain funds deposited in various savings banks, where the donor had delivered a box containing his bank books

to the donee, the court, in discussing the elements necessary to constitute a gift causa mortis, held that to sustain such gift it must be made under apprehension of death from some present disease, or other impending peril, though it was not necessary to the validity of the gift that the donor should die of the disease from which he apprehended death; and that the gift would become void by recovery from the disease, or escape from the peril; but that it was not necessary that the gift should be made in extremis and when there is no time or opportunity to make a will, and that it would be sufficient to render the gift effectual if, before his recovery from the disease from which he apprehended death, he should die from some other disease existing at the same time. "In many of the reported cases," say the court, "the gift was made weeks, and even months, before the death of the donor when there was abundant time and opportunity for him to have made a will." 2 Kent's Com. 444; Story Eq. Juris. §§ 606, 607; 3 Pomeroy's Eq. Juris. § 1146; *Grymes* v. *Hone*, 49 N. Y. 17, 21. In the case last cited, the court say:

True, the donor died five months thereafter; but we are referred to no case or principle that limits the time within which the donor must die to make such a gift valid. The only rule is that he must not recover from that illness." See also *Williams* v. *Guile*, 117 N. Y. 343.

In the case before us the gift was made during the last sickness of the donor; it was evidenced by every element necessary to constitute a valid gift; it was coupled with a trust reposed in and conferred upon the defendant to perform certain duties, the terms of which were to be performed after the decease of the donor. That trust appears to have been fully and faithfully executed. The title to the property, therefore, so far as the deceased, his administrator, and the bank were concerned, was by the order in writing and the delivery of the same together with the savings bank book, vested in the defendant.

*Judgment for defendant.*