(48 Misc. Rep. 578.)

WADDELL et al. v. HANOVER NAT. BANK OF CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County. November, 1905.)

1. BILLS AND NOTES—NEGOTIABLE DRAFT.

Plaintiff sued to recover on a draft for $1,500 "400 c/ A. R. L. No. 3362—via A. R. L. B. L. direct." The words quoted under the ordinary custom and usage of business charged the payee with the knowledge that a certain number of cases had been shipped by a certain line, and that the bill of lading went direct to the payee. *Held*, that as the draft in question contained an unconditional order to pay a sum certain in money it was negotiable under Negotiable Instruments Law, Laws 1897, p. 722, c. 612, §§ 20, 22, and it does not indicate that the amount of the draft is to be paid only from the proceeds of the consignment.

2. SAME—PAYMENT BY DRAWEE.

Where the drawees of a negotiable draft had paid the same to a holder in due course, the draft being drawn by persons who claimed to have made a shipment to the drawee, they cannot recover back the moneys paid on discovering that the goods were never shipped to them.

Action by Edwin A. Waddell and Charles O. Shepard against the Hanover National Bank of the city of New York. Judgment for defendant.

Carrington & Pierce (Carlton B. Pierce, of counsel), for plaintiffs.
Persy S. Dudley, for defendant.

LEVENTRIT, J. The plaintiffs sue to recover money claimed to have been paid under a mistake of fact. Whether they can recover depends on the construction of the following instrument as negotiable or nonnegotiable.

"$1500.00　　　　　　　　　　　　　　　St. Louis, Mo., Jul. 14, 1904.
　"On demand, pay to the order of Jefferson Bank One thousand five hundred & no/Dollars 400 c/ A. R. L. No. 3362—via A. R. L. B. L. direct. Value received and charge same to account of Mound City Produce Co.
　　　　　　　　　　　　　　　"By Harris H. Johnston, Secy & Treasr.
　"To John A. Waddell & Co., New York City.
　"No. 599."

The essential facts are: The plaintiffs are commission merchants in this city. In April, 1904, their representative solicited the business of the Mound City Produce Company, a corporation engaged in the produce business in St. Louis, Mo. Under an arrangement whereby the plaintiffs agreed to pay drafts for reasonable amounts drawn at the time of the shipments, the produce company made several consignments to the plaintiffs in May and June. In each instance the drafts against the consignments were paid before the shipments were received.

On July 14, 1904, the produce company wrote the plaintiffs:

"Inclosed please find invoice of 400 cases of eggs shipped you in car No. 3362, A. R. L. stencilled F. We passed draft on you today for $1,500.00 which kindly protect upon presentation. * * *."

A statement of the consignment was inclosed in the letter and reached the plaintiffs on July 16th, before the presentation of the draft. This had been deposited in the Jefferson Bank in St. Louis, credited to the produce company's account, and forwarded to the defendant for

collection. The draft was duly presented on July 16th, shortly after the receipt of the produce company's letter, immediately paid by the plaintiffs and credited by the defendant to the Jefferson bank. On July 21st, the produce company failed, and two days later the plaintiffs discovered that no eggs had been shipped. Thereupon they promptly notified the defendant, and, failing to secure the return of the amount of their check, began this suit. Their contention here is that the draft in question was not a bill of exchange, but was simply an order for the payment of money out of a particular fund; that being non-negotiable, each successive assignee took it subject to the equities existing between drawer and drawee, and that the drawee can recover as for money paid without consideration.

I do not believe this contention sound. Section 20 of the negotiable instruments law (Laws 1897, p. 722, c. 612) declares that an instrument to be negotiable must be in writing signed by the maker or drawer, must contain an unconditional promise or order to pay a sum certain in money, must be payable on demand, or at a fixed or determinable future time, must be payabe to order or bearer, and where addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty. If the draft in question contains an unconditional order to pay a sum certain in money, it is negotiable as all the other requirements are met. Section 22 of the negotiable instruments law declares:

"An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with (1) an indication of a particular fund out of which reimbursement is to be made or a particular account to be debited with the amount; or (2) a statement of the transaction which gives rise to the instrument. But an order or promise to pay out of a particular fund is not unconditional."

The quoted sections are merely declaratory of existing law and simply succinctly summarize recognized principles. Thus: .

"A bill is an order drawn by one person on another to pay a third a certain sum of money absolutely and at all events. Under this definition the order cannot be paid out of a particular fund, but must be drawn on the general credit of the drawer, though it is no objection, when so drawn, that a particular fund is specified from which the drawee may reimburse himself. * * * The true test would seem to be whether the drawee is confined to the particular fund, or whether, though a specified fund is mentioned, he would have the power to charge the bill up to the general account of the drawer, if the designated fund should turn out to be insufficient. In the final analysis of each case, it must appear that the alleged bill of exchange is drawn on the general credit of the drawer." Munger v. Shannon, 61 N. Y. 253, 255, 256.

On its face, the draft is drawn simply on the general credit of the drawer. It does not contain an order to pay out of a particular fund; at most, it indicates to the drawees the particular fund out of which they are to reimburse themselves. In form the bill is the usual sight bill, negotiable, unless the contrary is clearly evidenced on the face of the instrument. Even if the writing "400 c/ A. R. L. No. 3362—via A. R. L. B. L. direct" be such as under the ordinary custom and usage of business to charge the payee and its assignee with the knowledge of its meaning that does not indicate more than that a certain number of cases have been shipped by a certain line, and that the bill of lading

goes direct to the consignee. It shows perhaps that the draft is drawn to pay in whole or in part for a consignment made to the drawee, but it does not indicate that the amount of the draft is to be paid, and paid only from the proceeds of the consignment. It indicates where the consignee shall seek reimbursement, not the exclusive appropriation of a fund due or to became due. The draft is payable on demand. It would have to be accepted according to its terms by the consignee and if the latter, deeming it ambiguous, had sought to restrict his liability by apt words of acceptance limiting the unqualified promise to pay unconditionally (Schmittler v. Simon, 101 N. Y. 554, 561, 5 N. E. 452, 54 Am. Rep. 737) it would have been promptly protested by the defendant. The course of action of all the parties interested supports the construction to be given the draft by an inspection of its face. The banks took it as a cash item. The notation on the draft and accompanying invoice would probably indicate that goods had been sold, and that the draft represented part or whole of the purchase price, but not that a draft payable on demand was to be paid from the proceeds of a consignment made, according to the statement the same day the draft was discounted by the payees. The drawees certainly treated the draft as negotiable. They had not yet received the eggs; they were required to pay before receipt; they had similarly paid on two previous occasions; they made no attempt to limit their acceptance. As between drawer and drawees, the intention was certainly not that the draft, made payable on demand, should be paid only out of the proceeds of the eggs to be received and sold after presentation.

"In all cases  *  *  *  in which a particular fund to accrue in futuro is designated in the draft, and the language is ambiguous, the turning point is whether it was the intention of the parties that the payment should be made only out of the designated fund, when or as it should accrue, or whether the direction to the drawee was intended to be absolute, and the fund was mentioned only as a source of reimbursement or an instruction as to bookkeeping." Brill v. Tuttle, 81 N. Y. 454, 457, 37 Am. Rep. 515. The intention of the parties was that a sight draft should be honored at the time of shipment, and reimbursement be sought from the sale of the shipment when and as made, in other words, the order to pay was intended to be unconditional.

In Whitney v. Eliot National Bank, 137 Mass. 351, 50 Am. Rep. 316, the draft read:

"$795.00. At sight pay to the order of Eliot National Bank seven hundred and ninety-five dollars value received, and charge the same to the account of 250 bbls. meal ex schooner Aurora Borealis.

"Hatheway & Co.

"To Geo. Morrison Esq., St. John, N. B."

The court held that the direction to charge the amount of the bill to a particular account did not make the draft payable conditionally, and the bill was held to be negotiable.

The plaintiffs rest their whole case, so far as authority is concerned, on Lowery v. Steward, 25 N. Y. 239, 82 Am. Dec. 346. There the draft read:

"$500.    ·  ·    ·    ·      ·      ·  ·  Columbus, March 1st, 1853.

"Messrs. John Steward Jr. & Co.: Please pay to the order of Archibald H. Lowery the sum of five hundred 00/100 dollars on account of 24 bales cotton shipped to you, as per bill of lading, by steamer Colorado, inclosed to you in letter.                                   "Strippleman & Boyce."

In the course of the opinion the court by way of dictum said :·

"The draft was not a bill of exchange requiring acceptance to bind the drawees, but a specific draft or order upon a particular fund."

This language is seized upon by the plaintiffs as conclusive in their favor. But this language must be read in connection with the facts of the case and what was actually, and doubtless correctly, decided. The draft referred to the bill of lading inclosed in a letter. It seems that the drawers had regular business dealings with the drawees, and were also indebted to the payees. All the transactions were between the original parties. The letter referred to stated:

"Inclosed please find bill of lading for 24 bales of cotton, shipped to you, which you will please sell to the best advantage. We have written Messrs. Lowery & Co. [the payees] New York, inclosing a draft on your house for ·$500 payable when the above cotton is sold."

· The drawers at once replied, stating, among other things:

"Your draft in favor of A. H. Lowery & Co. shall be honored from the proceeds of the cotton."

The payee having received a letter from the drawers, erroneously stating that the draft was inclosed and that its amount be credited, presented the letter to the drawees who said that the bill of lading had been received; "that it was all right; that the draft would be paid out of the proceeds of the cotton when sold." By the oversight of the drawers the draft was not forwarded till long after the drawees had sold the cotton and appropriated the proceeds to the payment of their own account against the drawers. On presentation by the payee payment was refused. It was held that the entire transaction amounted to a specific appropriation to the use of the payee of $500 of the proceeds of the cotton when sold. It will be noticed that this was not a sight draft, that it specifically referred to the letter, which directed payment only after the sale of the cotton, and that all parties had notice of this fact. The court refers to the letter, not the draft, as constituting "a clear and explicit appropriation of $500 of the proceeds of said cotton when sold." The case comes within the rule laid down in Brill v. Tuttle, supra, that where the fund is to accrue in futuro the turning point is whether the parties intended that the payment should be made only out of the designated fund. In the Lowery Case such was the clear intention of the parties and the draft was held nonnegotiable, and as constituting an equitable assignment. The decision does not rest on the wording of the draft alone. That the correspondence was taken into consideration is clear from the court's construction of this case in Brill v. Tuttle, 81 N. Y., at page 461, 37 Am. Rep. 515. On the whole case, I am satisfied that the draft in suit was a negotiable instrument, and that the plaintiffs cannot invoke the equities existing between them and the produce company.·  ·

· ·It follows that there should be judgment for the defendant. ·

Judgment for defendant.